Judith A. WOOD, Plaintiff/Appellant,

v.

Mary PARKER, et al., Defendants/Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Feb. 8, 1995.

Permission to Appeal Denied by Supreme Court May 30, 1995.

Richard J. Braun and Patricia E. Crotwell, Richard J. Braun & Associates, Nashville, for appellant.

Ward Dewitt, Jr., Mary Thomson Lemense, and Amanda Haynes Young, Trabue Sturdivant & Dewitt, Nashville, for appellees.

## OPINION

LEWIS, Judge.

This appeal arises out of a legal malpractice action in which plaintiff/appellant, Judith A. Wood, sued defendants/appellees, Mary Parker and Parker, Allen, Leech, Masten, Smith & Austin, for the representation of plaintiff in a sexual discrimination action by Ms. Parker and her associates.

Following the filing of the complaint in the legal malpractice action, defendants moved for summary judgment. The trial court granted partial summary judgment in favor of defendants, holding that "all of plaintiff's claims for legal malpractice against the defendants which are alleged to have been committed before May 3, 1989 are barred by the one-year statute of limitations contained in T[ennessee] C[ode] A[nnotated] [section] 28–3–104." [1]  The trial court granted plaintiff

---

1.  **Personal tort actions.**—(a) Actions for libel, for injuries to the person, false imprisonment, malicious prosecution, criminal conversation, seduction, breach of marriage promise, actions and suits against attorneys for malpractice whether said actions are grounded or based in contract or tort, civil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes, and actions for statutory penalties shall be commenced within one (1) year after cause of action accrued.

(b) For the purpose of this section, insofar as products liability cases are concerned, the cause of action for injury to the person shall accrue on

permission to seek an interlocutory appeal; however, this court denied plaintiff's application on 21 April 1992.

In July 1992, defendants moved for summary judgment on the issue that had been raised by the first amended complaint: whether the defendants acted appropriately in withdrawing from representation of plaintiff Wood. The trial court, following a review of the record, determined that there was no genuine issue of material fact to this issue and granted defendants' motion for summary judgment. Plaintiff moved to amend her complaint on 9 February 1994, which motion was heard by the court after summary judgment had been granted. Subsequently, plaintiff perfected the instant appeal.

While the instant suit proceeded in the Chancery Court for Davidson County, plaintiff's suit in the sexual discrimination matter against Emerson Electric and others proceeded with substitute counsel in the Chancery Court for Rutherford County. Plaintiff's case against Emerson was tried before a jury, and plaintiff received a judgment of $241,000.00 in compensatory damages and $72,242.50 for attorney's fees. The defendants in the Emerson case appealed, and this court affirmed the trial court in all respects. The defendants in the underlying suit requested permission to appeal to the Supreme Court. However, in October 1994, prior to the Supreme Court acting on the defendants' application in the Emerson case, plaintiff settled all of her claims against Emerson. As a result of the settlement, plaintiff will receive $350,000.00, an amount greater than the judgment entered in the trial court.

After the instant appeal was perfected, this court granted defendants' motion to consider the settlement of the Emerson litigation as a post-judgment fact.

### FACTS

In October 1985, plaintiff retained defendant Mary Parker to represent her in a sexual discrimination and harassment claim against Emerson Electric Company, Chromolax Division, Murfreesboro, Tennessce. On 21 December 1985, plaintiff provided defendant Parker with an accounting of her claims against Emerson. In May 1986, seven months after she was retained, defendant Parker filed a complaint on behalf of Wood against Emerson in the Rutherford County Chancery Court. Defendant Parker and her associates continued to represent plaintiff in the Emerson lawsuit until the court permitted Ms. Parker to withdraw in November 1989.

The facts surrounding Ms. Parker's withdrawal are as follows. On 29 June 1989, defendant Parker filed her first motion seeking to withdraw from representation of plaintiff in the Emerson case. Ms. Parker filed this motion after a meeting with the plaintiff at which the plaintiff voiced displeasure with the handling of her case by defendant. Defendant Parker, as grounds for the motion, stated, *inter alia,* "Plaintiff would be better served by obtaining new counsel with whom she could establish a better rapport and confidence." The case of Wood v. Emerson had not been set for trial when Ms. Parker filed her motion seeking to withdraw. Subsequent to Ms. Parker's motion for withdrawal being filed, but before it was heard, Emerson filed a motion seeking partial summary judgment, based upon this court's decision in *Hoge v. Roy H. Park Broadcasting of Tennessee, Inc.,* 673 S.W.2d 157 (Tenn.App.1984), in which this court held that Tennessee's one-year statute of limitations applied to civil actions alleging discrimination and that all suits complaining of individual acts of discrimination must be filed within one year of the alleged acts. Plaintiff and defendant Parker disagreed as to how to respond to Emerson's motion. Plaintiff alleges that she did not "refuse" defendant Parker's advice on how to respond to the motion, but felt that Ms. Parker's approach would "butcher down" her complaint to nothing.

the date of the personal injury, not the date of the negligence or the sale of a product, and in said products liability cases no person shall be deprived of his right to maintain his cause of action until one (1) year from the date of his injury, and under no circumstances shall his cause of action be barred before he sustains an injury.
Tenn.Code Ann. § 28–3–104 (1980).

On 17 July 1989, Chancellor Whitney Stegall heard defendant Parker's motion for permission to withdraw, denied the motion, and directed plaintiff and defendant Parker to meet and attempt to work things out. This order also stayed action on the Emerson summary judgment motion so that plaintiff's rights were not prejudiced by the withdrawal motion. Pursuant to the order, the parties, on 31 July 1989, met in an attempt to resolve their disputes, but were unsuccessful. Defendant Parker attempted to assist plaintiff in locating substitute counsel and promised to cooperate fully with new counsel.

On 21 August 1989, a second hearing was had on the motion to withdraw. At this hearing, plaintiff told the court her perception of the real reason for defendant Parker's decision to withdraw and of her difficulties in finding substitute counsel. Chancellor Stegall, again, denied the motion to withdraw. During the later part of 1989, plaintiff began to seek counsel to sue defendant Parker for malpractice. On 19 October 1989, defendant Parker filed an amended motion seeking to withdraw. Defendant Parker alleged in her motion that an irreconcilable conflict had arisen between her and plaintiff that mandated her withdrawal. Ms. Parker alleged that the irreconcilable conflict was created by plaintiff Wood and defendant Parker's disagreement over the way in which to respond to the Emerson motion for partial summary judgment and plaintiff seeking advice from other counsel concerning the filing of a legal malpractice claim against defendant Parker.

At the time Parker filed the amended motion seeking to withdraw, plaintiff had not retained an attorney in the legal malpractice matter; however, she had discussed the matter with Attorney Richard Braun. On 19 November 1989, the Chancellor granted defendant Parker's amended motion to withdraw. Defendant Parker made it clear that she would cooperate fully with new counsel, and she turned her Emerson file over to plaintiff Wood.

Attorney Richard Braun entered an appearance on behalf of plaintiff in the Emerson litigation in March 1990. The Emerson motion for partial summary judgment was denied. Following discovery, the suit was brought to trial before a jury, and the jury returned a verdict in favor of plaintiff. The trial court entered judgment for Wood on the jury's verdict in the amount of $241,000.00 in compensatory damages and awarded attorney's fees of $72,242.50 to plaintiff Wood's counsel, under the fee shifting provisions of Tennessee's discrimination statute. Plaintiff Wood's suit against Emerson and others was appealed to this court and affirmed in all respects. *Wood v. Emerson Elec. Co.,* No. 01–A–01–9310–CH–00467, 1994 WL 716270 (Tenn.App. 12 August 1994). As we stated earlier, Emerson requested permission to appeal, but dismissed its appeal after a final settlement in the amount of $350,000.00 was reached between plaintiff Wood and defendant Emerson.

On 3 May 1990, plaintiff filed this legal malpractice action and has alleged: (1) that the defendants failed to exercise ordinary care, skill, and diligence in filing the complaint promptly; (2) that the defendants failed to exercise ordinary care, skill, and diligence in conducting discovery; (3) that the defendants failed to exercise ordinary care, skill, and diligence in allowing the complaint against Emerson to be dismissed in March 1988; (4) that defendants failed to exercise ordinary care, skill, and diligence in filing a motion to withdraw without obtaining counsel for plaintiff; and (5) that defendants failed to create and maintain time records for their services so that in the event plaintiff prevailed, plaintiff could obtain judgment against Emerson in the underlying action for attorney's fees. After the Chancellor granted summary judgment in favor of Parker on 18 February 1994, plaintiff moved to amend her first amended complaint to allege the failure to create and maintain time records as an act of malpractice.

## ANALYSIS

The sole issue before this court is whether the trial court erred in granting defendants' summary judgment motion. Since this is an appeal from the granting of a motion for summary judgment, "normal review pursuant to Rule 13(d) of the Tennessee Rules of Appellate Procedure does not apply. Instead our role is to determine whether the require-

ments of Rule 56 of the Tennessee Rules of Civil Procedure were met." *Price v. Mercury Supply Co.*, 682 S.W.2d 924, 929 (Tenn. App.1984) (citations omitted).

Rule 56 comes into play only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Thus, the issues that lie at the heart of evaluating a summary judgment are: (1) whether a *factual* dispute exists; (2) whether the disputed fact is *material* to the outcome of the case; and (3) whether the disputed fact creates a *genuine* issue for trial.

*Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).

■ A defendant is therefore entitled to summary judgment if the trial court determines that the complaint and undisputed facts in the record fail to state a claim upon which relief can be granted. *Price v. Mercury Supply Co.*, 682 S.W.2d at 930.

"[S]ummary judgment is a helpful device, in appropriate cases, for the just, speedy, and inexpensive resolution of litigation." *Byrd v. Hall*, 847 S.W.2d at 216.

■ This court will affirm the trial court's summary judgment if it finds that the trial court reached the correct result, "irrespective of the reasons stated." *Clark v. Metropolitan Gov't of Nashville and Davidson County*, 827 S.W.2d 312, 317 (Tenn.App. 1991).

Plaintiff has presented three issues concerning the grant of summary judgment. Plaintiff's first issue is: "Whether the Chancellor erred by awarding summary judgment in favor of the defendant[s] as to the defendants' failure to keep time records thereby reducing the plaintiff's attorney's fee award in the Emerson litigation."

The Chancellor, in his Memorandum, addressed this claim as follows:

[T]he Court finds, first, that no allegations are made in plaintiff's complaint, as amended, to support such a theory of recovery; and second, if it be deemed or implied that a claim or cause of action is stated in the complaint, as amended, on the ground that defendants committed legal malpractice by failing to create and maintain time records for the work they performed as attorneys for the plaintiff in the underlying lawsuit, the defendants could not and would not be legally liable to the plaintiff on such a theory. The plaintiff never compensated the defendant for any legal services rendered to the plaintiff in said underlying lawsuit and has no cause of action for claiming damages therefor.

■ Tennessee Code Annotated section 4–21–311 provides, *inter alia*, that: "[T]he court ... may award to the plaintiff actual damages sustained by such plaintiff, together with the costs of the lawsuit, including a reasonable fee *for the plaintiff's attorney of record....*" Tenn.Code Ann. § 4–21–311 (Supp.1994) (emphasis added). It seems clear to us that the statute provides that the attorney's fees are *for* the attorney, and not a windfall damage award to the plaintiff.

The words of Tennessee Code Annotated section 4–21–311 are in sharp contrast to 42 United States Code section 1988, the Federal Civil Rights Statute, which provides: "[T]he court, in its discretion, may allow the *prevailing party* ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (Supp. 1992) (emphasis added). Plaintiff contends that because the attorney's fee award was her property, she has a claim against the defendants for the sum that would have been awarded, based on their time in the Wood v. Emerson litigation. From her brief and at oral argument, plaintiff premised her entire argument upon case law, which interpreted 42 United States Code section 1988. The United States Supreme Court has held that the Federal statute requires a finding that the fees are awarded to the prevailing party, not the prevailing attorney. *Evans v. Jeff D.*, 475 U.S. 717, 730–32, 106 S.Ct. 1531, 1538–40, 89 L.Ed.2d 747, 759–60 (1986). We are of the opinion that a natural reading of Tennessee Code Annotated section 4–21–311 requires a different result. The Tennessee General Assembly specifically directs the fees to the attorney, making the award of fees *for* the plaintiff's attorney of record. The plaintiff is awarded his or her actual damages. Under Tennessee Code Annotated section 4–21–311, plaintiff Wood has no legal-

ly cognizable interest in the attorney's fees. The plaintiff's reliance on case law interpreting the Federal statute is misplaced. The Chancellor correctly determined that as a matter of law, plaintiff had no cause of action against defendants for attorney's fees that may have been awarded under Tennessee Code Annotated section 4–21–311. This issue is without merit.

Plaintiff's second issue is: "Whether the Chancellor erred by awarding summary judgment in favor of the defendant as to the withdrawal of the defendant from her representation of the plaintiff in the Emerson litigation."

We find nothing in this record to show that defendant Parker's withdrawal from representation of plaintiff deviated from the accepted standard of care for attorneys in Tennessee.

■ To prove legal malpractice, a plaintiff must establish that the lawyer's conduct fell below that degree of care, skill, and diligence which is commonly possessed and exercised by attorneys practicing in the same jurisdiction. *Spalding v. Davis*, 674 S.W.2d 710, 714 (Tenn.1984).

■ Defendant Parker followed the ethical considerations and disciplinary rules in seeking and receiving permission from the trial court to withdraw from her representation of plaintiff. The allegations in the complaint relative to the issues of withdrawal are:

18. Defendants failed to obtain substitute counsel for plaintiff in the Emerson Electric Company lawsuit.

19. In or about November, 1989, the Court granted defendants' motion to withdraw as counsel for plaintiff in the Emerson Electric Company lawsuit. In inducing the Court to allow defendants to withdraw, defendant Parker represented to the Court on August 21, 1989: "I made no apology and make no apology for botching up this case. There is nothing botched up about it." Defendant Parker further advised the Court: "For the record, I think this is a winnable case. She just needs counsel that she respects and gets along with and that's not me, which I'm sorry."

. . . .

24. Defendants failed to exercise ordinary care, skill and diligence in refusing to continue to represent plaintiff and in filing a motion to withdraw, without obtaining substitute counsel for plaintiff solely because defendants had made a decision to discontinue their participation in employment or sexual discrimination cases. The result was to create and enhance plaintiff's dissatisfaction with defendants' performance as attorneys.

Plaintiff alleges that the foregoing establishes a cause of action for legal malpractice on the bases of breach of contract, negligence, negligent misrepresentation, and breach of fiduciary duty. These allegations, and the record in this case, do not establish that defendants' conduct fell below that degree of care, skill, and diligence commonly possessed and exercised by attorneys practicing law in this jurisdiction.

The undisputed facts and expert opinion of Barbara J. Moss established that defendant Parker's withdrawal of representation of Wood in the Emerson litigation was reasonable and appropriate, taking all the necessary steps to minimize possible harm to plaintiff. Moreover, under the circumstances, withdrawal was the only prudent course of action given the strained relationship between plaintiff and defendant Parker.

■ The Code of Professional Responsibility does not establish a standard of care for attorneys practicing in Tennessee. As our Supreme Court stated in *Lazy Seven Coal Sales, Inc. v. Stone & Hinds*, 813 S.W.2d 400, 405 (Tenn.1991), "[T]he Code of Professional Responsibility is not designed to create a private cause of action for infractions of disciplinary rules but is designed to establish a remedy solely disciplinary in nature. The Code does, however, provide guidance in ascertaining a lawyer's obligation to his or her client under various circumstances". *Id.* Disciplinary Rule 2–110(C) permits an attorney to withdraw in matters pending before a tribunal if:

(1) His client:

(a) Insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good

faith argument for an extension, modification, or reversal of existing law.

(b) Personally seeks to pursue an illegal course of conduct.

(c) Insists that the lawyer pursue a course of conduct that is illegal or that is prohibited under the Disciplinary Rules.

(d) By other conduct renders it unreasonably difficult for the lawyer to carry out his employment effectively.

(e) Insists, in a matter not pending before a tribunal, that the lawyer engage in conduct that is contrary to the judgment and advice of the lawyer but not prohibited under the Disciplinary Rules.

(f) Deliberately disregards an agreement or obligation to the lawyer as to expenses or fees.

(2) His continued employment is likely to result in a violation of a Disciplinary Rule.

(3) His inability to work with co-counsel indicates that the best interests of the client likely will be served by withdrawal.

(4) His mental or physical condition renders it difficult for him to carry out the employment effectively.

(5) His client knowingly and freely assents to termination of his employment.

(6) He believes in good faith, in a proceeding pending before a tribunal, that the tribunal will find the existence of other good cause for withdrawal.

Tennessee Code of Professional Responsibility DR 2–110(C); Tenn.R.Sup.Ct. 8.

Here, the defendants were granted permission to withdraw from their representation of plaintiff in the Emerson litigation in November 1989. At the time the court allowed the withdrawal, plaintiff Wood had contacted other legal counsel to represent her in a malpractice action against defendants.

Under the circumstances, plaintiff's action made it unreasonably difficult for defendant Parker to continue effectively as attorney for plaintiff.

Plaintiff claims there was a dispute as to the real motive for defendant Parker's motion to withdraw. The disputed fact in this instance is immaterial. The record shows there was clearly a serious conflict between attorney and client at the time of withdrawal, which alone justified withdrawal.

The parties also had serious disagreements over how to respond to Emerson's motion for partial summary judgment. Defendant Parker was of the opinion that the position plaintiff wanted to take was not warranted under existing law or supported by a good faith argument for an extension, modification, or reversal of existing law. Plaintiff now asserts that she did not reject defendant's advice on the Emerson motion; however, she did strongly object to defendant's advice. This objection is clear from her correspondence with Parker and her words before the Chancellor at the August hearing on the first motion to withdraw. There may be a dispute of fact as to whether Wood "rejected" Parker's advice; however, that dispute is not material. The parties were not communicating in a fashion to support continuation of legal representation.

As defendants have stated in their brief, "The relationship of attorney and client must be one in which the client has trust and confidence in a lawyer. If the lay person does not trust and confide and have confidence in the lawyer, the lawyer should seek to withdraw so that the client can get other representation." Disciplinary Rule 2–110(A) requires that a lawyer follow proper procedure in seeking permission from the court to withdraw and take reasonable steps to avoid foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled and complying with all applicable laws and rules. Tennessee Code of Professional Responsibility DR 2–110(A).

There is no allegation in the complaint that defendant deviated in any way from the requirements set forth in the disciplinary rules. The facts in this case establish compliance with all ethical considerations and disciplinary rules.

Plaintiff presented the affidavit of Carol McCoy, an attorney in private practice in Davidson County, to support her allegation

that defendant Parker's withdrawal in November 1989 was a deviation from the standard of care applicable to attorneys practicing in this jurisdiction. Carol McCoy limited her expert opinion by

> assum[ing] that the real reason for the withdrawal of Mary Parker were the fact[s] that Marsh Nichols no longer wanted to work on the case and that Mary Parker no longer wanted to represent Judy Wood and that such a case was no longer financially or politically attractive to Mary Parker. [Ms. McCoy's] opinion also assumed that there was not, at the time of the withdrawal, a conflict of interest between Judy Wood and Mary Parker which created an irreconcilable adversarial relationship.

However, Ms. McCoy conceded that had such a conflict existed "good cause to withdraw may well [have been] present."

The undisputed facts show that plaintiff had contacted attorneys regarding a malpractice suit against defendants, prior to the amended motion to withdraw and that the parties had a breakdown in their relationship beginning before the first motion to withdraw was filed in June 1989, which continued through November 1989.

The issue as to whether the withdrawal was proper is a legal question to be decided by the court. The facts necessary to hold, as a matter of law, the defendants' withdrawal from representation of plaintiff in the Emerson suit, did not constitute legal malpractice were properly before the Chancellor.

Plaintiff contends that the Chancellor gave *res judicata* effect to the Chancellor's order permitting withdrawal in the Emerson case and that this was error. The cases relied upon by plaintiff do not support her position. She cites *Fisher v. State*, 248 So.2d 479 (Fla. 1971); however, in *Fisher* the court only said that court approval for withdrawal does not insulate an attorney from "any civil liability for breach of duty or negligence to his client nor from appropriate disciplinary procedures for such act, if it is wrongfully done." *Id.* at 486. There is a distinction between negligence of the conduct in the underlying litigation and the act of withdrawal, for which there may be disciplinary action if the withdrawal is done wrongfully. There is no allegation in the instant case that the withdrawal subjected defendants to disciplinary action or was procedurally flawed in any way. We have considered each of the cases cited by plaintiff and find them to be inapposite to the facts here.

Plaintiff's third issue is: "Whether the Chancellor erred by concluding that the statute of limitations barred consideration of the plaintiff's claims that were predicated upon events that occurred prior to May 3, 1989?"

Plaintiff filed this malpractice action on 3 May 1990. The Chancellor held that plaintiff's claims of alleged malpractice occurring prior to 3 May 1989 were barred by the statute of limitations applicable to attorney's malpractice claims. Tenn.Code Ann. § 28–3–104. The trial court thus barred three of plaintiff's allegations of negligence pursuant to the one-year statute of limitations: failure to file suit in 1985; failure to conduct discovery in 1986; and allowing the case to be dismissed, without prejudice, in 1988. Two of the three claims are conceded by plaintiff. Only the allegation of delay in filing suit remains at issue on this appeal.

▮ The timeliness of the filing of the initial suit against Emerson is a moot issue. Wood prevailed in her suit against Emerson and was awarded compensatory damages of $241,000.00 plus $72,242.50 for attorney's fees. *Wood v. Emerson Elec. Co.*, No. 01–A–01–9301–CH–00467, 1994 WL 716270 (Tenn. App. at Nashville 12 August 1994.) The jury award fully compensated plaintiff. Therefore, plaintiff suffered no injury from the delay in filing the complaint. The only damages Wood could have claimed against these defendants, if she had succeeded in establishing negligence, are those damages she would have recovered against Emerson but for the defendants' negligence. There are no allegations of such injury in the amended complaint filed in the instant suit. Negligence without injury is not actionable. *Security Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860, 864 (Tenn.1983). The final judgment in favor of Ms. Wood in the Emerson case, and now the settlement of that case on appeal, renders this issue moot.

We have considered each of the arguments of plaintiff and find them to be without merit. It therefore results that the judgment of the trial court is affirmed in all respects, and the cause is remanded to the trial court for the enforcement of its judgment and any further necessary proceedings. Costs on appeal are taxed to plaintiff/appellant, Judith A. Wood.

TODD, P.J., and CANTRELL, J., concur.