# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 4, 2020 Session

## CORED, LLC v. STEVE HATCHER ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 18-514, 18-699  Ellen Hobbs Lyle, Chancellor**

_____

### No. M2020-00083-COA-R3-CV

_____

This is an appeal from a company's claim of a violation of the Tennessee Consumer Protection Act against the individual owners of a limited liability company serving as its contractor. In 2017, Cored, LLC entered into a construction contract with Astercor Group, LLC for the construction of two homes in Nashville. A dispute arose as to the specifics of the contract, and a complaint was filed against Cored, LLC, for breach of contract. In response to the complaint against it, Cored, LLC filed its own complaint against the individual owners of Astercor Group, LLC for violating the Contractor's Licensing Act of 1994 and thus violating the Tennessee Consumer Protection Act. Although the respective lawsuits were eventually consolidated, this appeal concerns only Cored, LLC's lawsuit against the individual owners of Astercor Group, LLC. The trial court ultimately dismissed the lawsuit on the basis that the statute of limitations had run due to the company's failure to properly serve the individual owner defendants. Additionally, the trial court denied the individual owners' request for attorney's fees pursuant to Tennessee Code Annotated section 20-12-119(c). For the reasons stated herein, we affirm the trial court in both respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

J. Brad Scarbrough and Adam O. Knight, Brentwood, Tennessee, for the appellants, Steve Hatcher, and Carol Hatcher.

S. Joe Welborn, Petar A. Angelov and Thomas B. Hall, Nashville, Tennessee, for the appellee, Cored, LLC.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

This appeal arises from a consolidated case wherein Cored, LLC ("Cored") seeks to hold Steve and Carol Hatcher (jointly, the "Hatchers") personally liable for unlicensed contracting performed by their company, Astercor Group, LLC ("Astercor"), a violation of the Tennessee Consumer Protection Act ("TCPA").[1]

On March 20, 2017, Cored entered into a Construction Agreement (the "Agreement") with Astercor for the construction of two homes in Nashville. Per the Agreement, Astercor was to furnish all labor, materials, equipment, and services necessary to finish the development project, with payment to be made by Cored. However, disputes arose between the parties as to their respective rights, obligations, and performance as required under the Agreement. In May of 2018, Astercor filed a lawsuit against Cored alleging breach of contract. Subsequently, in June 2018, Cored initiated the present action by filing its own complaint (the "Complaint") against the Hatchers, individually, in the Davidson County Chancery Court, arguing that the Hatchers violated the Contractor's Licensing Act of 1994, and thus the TCPA.[2]

Cored filed its complaint and had process issued against the Hatchers on June 25, 2018, and attempted to effectuate service by mail. Pursuant to Tennessee Rule of Civil Procedure 3, Cored had 90 days from the issuance of the summons to serve process on the

---

[1] Astercor initially filed suit against Cored for breach of contract in May of 2018. Cored responded to this lawsuit and filed a counterclaim against Astercor as well as a separate lawsuit against the Hatchers individually. The trial court ultimately consolidated the two lawsuits. As far as this record indicates, the initial lawsuit filed by Astercor is still pending.

[2] Tennessee Code Annotated section 62-6-136 provides:

> (a) It is unlawful for any person, firm or corporation to represent itself as a licensed contractor or to act in the capacity of a "contractor" as defined in §§ 62-6-102, or 62-37-103 [repealed], and rules and regulations of this state, or any similar statutes, rules and regulations of another state, while not licensed, unless such person, firm or corporation has been duly licensed under § 62-6-103 or § 62-37-104 [repealed].
>
> (b) In addition to the penalties set out in § 62-6-120, § 62-37-114 [repealed] or § 62 -37-127 [repealed], a violation of this section shall be construed to constitute an unfair or deceptive act or practice affecting the conduct of trade or commerce under the Tennessee Consumer Protection Act of 1977, compiled in title 47, chapter 18, part 1; and, as such, the private right of action remedy under the Tennessee Consumer Protection Act of 1977 shall be available to any person who suffers an ascertainable loss of money or property, real, personal or mixed, or any other article, commodity or thing of value wherever situated as a result of the violation.
>
> (c) An individual who violates this section and would, but for this section, have limited liability as owner of an entity having limited liability protection, including, but not limited to, a corporation, is personally liable for the individual's own representations, act or omissions to the same extent as if that individual rendered the representations, act or omissions as an individual.

Hatchers. In the event that it did not properly serve process within 90 days, Cored would need to continue the action by obtaining issuance of new process within one year from the issuance of the previous process in order to rely on the original commencement of the action to toll the statute of limitations under the TCPA.[3]

Certified copies of the summonses with copies of Cored's Complaint were then sent via certified return receipt mail to the Hatchers on June 29, 2018. The address used by Cored for service on the Hatchers was a postal box at a UPS store where the Hatchers received their mail. Upon delivery of the envelopes containing the summonses and Complaint, a UPS store employee, Carin Koop, ("Ms. Koop"), signed the return receipt card acknowledging receipt of the envelopes. The Hatchers filed an answer to Cored's complaint ("Answer") on October 12, 2018, wherein they asserted the affirmative defense of insufficiency of service of process. Specifically, the Hatchers stated that Ms. Koop was not an agent authorized by appointment or by law to receive service of process on their behalf.

On June 27, 2019, the Hatchers filed a *Motion for Judgment on the Pleadings* (the "Motion") to dismiss Cored's Complaint for failure to state a claim upon which relief can be granted. On July 10, 2019, the Hatchers filed four declarations in support of their motion.[4] Specifically, the Hatchers argued that because they were never properly served within 90 days of the issuance of the initial summonses as required under Rule 3 and Cored never reissued the summonses within a year from the date of issuance of the prior process, the statute of limitations under the TCPA had run, and any such claims in that regard were now barred. *See* Tenn. Code Ann. § 47-18-110; *Schmank v. Sonic Auto., Inc.*, No. E2007-01857-COA-R3-CV, 2008 WL 2078076, at *2 (Tenn. Ct. App. May 16, 2008) ("The Tennessee Consumer Protection Act provides that an individual or private action commenced for injury resulting from an unfair or deceptive act or practice 'shall be brought within one (1) year from a person's discovery of the unlawful act or practice.'").

On July 8, 2019, Cored filed a response to the Hatchers' Motion, arguing that service had been proper. On August 13, 2019, the trial court denied the Hatchers' Motion without prejudice in order to allow Cored an opportunity to conduct discovery on the issue of whether Cored obtained proper service on the Hatchers in June of 2018.

---

[3] According to Tennessee Rule of Civil Procedure 3,

[i]f process remains unissued for 90 days or is not served within 90 days from issuance . . . the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations unless the plaintiff continues the action by obtaining issuance of new process within one year from the issuance of the previous process or, if no process is issued, within one year of the filing of the complaint.

[4] Included were the declarations of Steve Hatcher, Carol Hatcher, Carin Koop and Myroslav Kuzmyn.

While Cored initially issued subpoenas and noticed depositions, it ultimately decided not to conduct any additional discovery on the issue of service. Instead, the Hatchers allege that on September 27, 2019, Cored withdrew its subpoenas and cancelled the depositions scheduled for October 1, 2019.[5] Thereafter, the Hatchers filed a renewed motion to dismiss the complaint (the "Renewed Motion"), again claiming that the statute of limitations had run on Cored's claim, as well as seeking an award of their attorney's fees pursuant to Tennessee Code Annotated section 20-12-119(c).[6] In response to the Hatchers' Renewed Motion, Cored filed a response, arguing again that the original Complaint was properly served upon the Hatchers and that the Hatchers should be equitably estopped from arguing insufficiency of process, among other arguments.

By order dated December 5, 2019, the trial court granted the Hatchers' Renewed Motion but denied their request for an award of attorney's fees pursuant to Tennessee Code Annotated section 20-12-119(c), concluding that the Renewed Motion did not fit the circumstances of an initial dismissal as contemplated by the statute. The Hatchers timely filed a notice of appeal in this Court.

## ISSUES PRESENTED

The Hatchers raise only one issue in their brief: whether the trial court erred in holding that the Hatchers were not entitled to attorney's fees pursuant to Tennessee Code Annotated section 20-12-119(c) by concluding that their Motion did not fit the circumstances of an initial dismissal of the case as contemplated by the statute.

Likewise, Cored raises a single issue for our review: whether the trial court erred in granting the Hatchers' Renewed Motion.

## STANDARD OF REVIEW

The threshold question presented by this appeal is whether the trial court erred in granting the Hatchers' Renewed Motion that resulted in a dismissal of Cored's claims

---

[5] Nowhere in its brief does Cored address the alleged cancellation of depositions and withdrawal of subpoenas.

[6] The statute relied upon by the Hatchers states in pertinent part,

> where a trial court grants a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief may be granted, the court shall award the party or parties against whom the dismissed claims were pending at the time the successful motion to dismiss was granted the costs and reasonable and necessary attorney's fees incurred in the proceedings as a consequence of the dismissed claims by that party or parties. The awarded costs and fees shall be paid by the party or parties whose claim or claims were dismissed as a result of the granted motion to dismiss.

Tenn. Code Ann. § 20-12-119(c)(1).

under the TCPA. Under Tennessee procedural law, a motion for judgment on the pleadings is effectively treated as a motion to dismiss for failure to state a claim upon which relief can be granted. *King v. Betts*, 354 S.W.3d 691, 709 (Tenn. 2011) (citing *Timmins v. Lindsey*, 310 S.W.3d 834, 838 (Tenn. Ct. App. 2009)); *Waldron v. Delffs*, 988 S.W.2d 182, 184 (Tenn. Ct. App. 1998) (citation omitted)).

When reviewing a trial court's order granting a motion for judgment on the pleadings, we must use the same standard of review we use to review orders granting a motion to dismiss for failure to state a claim. *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citing *Waller v. Bryan*, 16 S.W.3d 770, 773 (Tenn. Ct. App. 1999)). Therefore, "we must accept as true 'all well-pleaded facts and all reasonable inferences drawn therefrom' alleged by the party opposing the motion." *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 470 (Tenn. 2004) (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991)). Additionally, we "review the trial court's decision de novo without a presumption of correctness." *Young*, 130 S.W.3d at 63 (citing *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)). A court should uphold the trial court's grant of a motion "only when it appears that the plaintiff can prove no set of facts in support of a claim that will entitle him or her to relief." *Id.*

In proceeding on a motion to dismiss,

> [i]f either or both of the parties submit evidentiary materials outside the pleadings in support of or in opposition to a [motion to dismiss for failure to state a claim] and the trial court decides to consider these materials, the trial court must convert the motion to dismiss to a motion for summary judgment and notify the parties that it has made the conversion[.]

*See Staats v. McKinnon*, 206 S.W.3d 532, 543 n.14 (Tenn. Ct. App. 2006) (internal citations omitted). "Tennessee case law on this issue views the matters outside the pleadings as 'extraneous evidence.'" *Patton v. Estate of Upchurch*, 242 S.W.3d 781, 786 (Tenn. Ct. App. 2007) (quoting *Pac. E. Corp. v. Gulf Life Holding Co.*, 902 S.W.2d. 946, 952 (Tenn. Ct. App. 1995)). The *Patton* Court went on to support this holding by citing to the practices of federal courts to "view matters outside the pleading[s] as including any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Id.* (quoting *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003)). Therefore, "matters outside the pleadings may include affidavits." *Id.* at 786-87. Furthermore, Rule 12.02 states in pertinent part,

> [i]f, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all

parties shall be given reasonable opportunity to present all material pertinent to such a motion by Rule 56.

Tenn. R. Civ. P. 12.02.

Summary judgment is appropriate where the moving party has demonstrated that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). "We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Rye*, 477 S.W.3d at 250 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). The burden is upon the moving party to establish that its motion satisfies these requirements. *See Staples v. CBL Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). Under the summary judgment standards established in *Rye*, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264.

## DISCUSSION

We first turn to Cored's assertion that the trial court erred in granting the Hatchers' Renewed Motion which, as discussed *infra*, we conclude should have technically been considered to have converted to a motion for summary judgment given the trial court's consideration of matters outside of the pleadings. In its brief, Cored advances four separate arguments to support its position on appeal that the trial court should have denied the motion. We will address each of those arguments separately.

### *Cored's Attempt to Serve Process on the Hatchers*

At issue is whether Cored's Complaint was properly served on the Hatchers in June of 2018 after being sent via certified return receipt mail to a mailing address which was a postal box located in a UPS store and accepted and signed for by a UPS store employee. Specifically, the trial court held that the UPS store employee who signed the return receipt card was not an agent for the Hatchers for the purpose of accepting service of process on their behalf. The trial court noted that this fact, combined with Cored's subsequent failure to obtain issuance of new process within one year from the previous issuance of process, pursuant to Rule 3, resulted in the running of the statute of limitations on Cored's claim:

[T]he statute of limitations was not tolled by the filing of the Complaint because Cored failed to serve the Hatchers within 90 days of issuance of the summonses and failed to get service reissued within one year of June 25, 2018. Therefore, Cored cannot rely upon the filing of this action and

issuance of the original summonses on June 25, 2018, to toll the running of the one-year statute of limitations for Cored's TCPA claims.

Tennessee Rule of Civil Procedure 4.04(1), which governs the service of process upon individuals, provides that service shall be made as follows:

> Upon an individual other than an unmarried infant or an incompetent person, by delivering a copy of the summons and of the complaint to the individual personally, or if he or she evades or attempts to evade service, by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, whose name shall appear on the proof of service, *or by delivering the copies to an agent authorized by appointment or by law to receive service on behalf of the individual served*.

Tenn. R. Civ. P. 4.04(1) (emphasis added). "The language of this rule makes clear that 'the preferred method of service is upon the individual … [] by delivery of the summons and complaint to the defendant personally.'" *Hall v. Haynes*, 319 S.W.3d 564, 572 (Tenn. 2010) (quoting Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 2-3(d), at 2–26 (2d ed. 2004)).

Notwithstanding the preferred method of service upon the individual, Tennessee Rule of Civil Procedure 4.04(10) provides that service may also be effectuated by mail. This rule provides as follows:

> Service by mail of a summons and complaint upon a defendant may be made by the plaintiff, the plaintiff's attorney or by any person authorized by statute. After the complaint is filed, the clerk shall, upon request, furnish the original summons, a certified copy thereof and a copy of the filed complaint to the plaintiff, the plaintiff's attorney or other authorized person for service by mail. Such person shall send, postage prepaid, a certified copy of the summons and a copy of the complaint by registered return receipt or certified return receipt mail to the defendant.

Tenn. R. Civ. P. 4.04(10). Additional requirements for effectuating service by mail are laid out in Tennessee Rule of Civil Procedure 4.03(2) wherein it states that "[i]f the return receipt is signed by the defendant, or by a person designated by Rule 4.04 or by statute, service on the defendant shall be complete." Therefore, in a case like the present one where the return receipts are not signed by the defendants, service shall not be deemed complete unless service is "to an agent authorized by appointment or by law to receive service on behalf of the individual served" as per Rule 4.04.

Taken together, Tennessee procedural rules permit service via certified return

receipt mail, upon an agent authorized by law or appointed as such. *See Hall*, 319 S.W.3d at 576-78. This concept is illustrated in *Hall v. Haynes*, wherein plaintiffs filed a civil action against MedSouth and one of its physicians, alleging medical malpractice. *See id*. at 567. At issue was whether plaintiffs properly effectuated service upon the defendants. *Id*. There, plaintiffs attempted to serve process upon the defendant physician three times: twice upon two separate customer service representatives, and once upon the accounts payable clerk. *Id*. at 568-70. Specifically, the dispositive question turned on whether any of the individuals upon whom service was attempted could be considered agents authorized by appointment to receive service of process on behalf of the defendant physician. *Id*. at 570. The plaintiffs contended that the accounts payable clerk was authorized to receive service of process for the complaint because she was one of the employees who regularly signed for certified mail and evidence was presented that supported this contention. *Id*. at 578-79. However, the Tennessee Supreme Court found that "[s]uch authority does not *ipso facto* establish that [the accounts payable clerk] was an agent authorized by appointment to receive service of process for [the defendant physician]." *Id.* at 579. The Court noted that "[a]cting as the defendant's agent for some other purpose does not make the person an agent for receiving service of process . . . [n]or is the mere fact of acceptance of process sufficient to establish agency by appointment." *Id.* at 573 (citing *Arthur v. Litton Loan Servicing LP*, 249 F. Supp. 2d 924, 929 (E.D. Tenn. 2002)). Ultimately, the Court found for defendants, holding that neither of the three employees of MedSouth constituted agents for the purpose of receiving service of process on behalf of the defendant physician. *Id*. at 585.

In the present case, Cored attempted to serve process on the Hatchers utilizing Rule 4.04(10) when it sent certified copies of the summonses along with copies of the complaint via certified return receipt mail to the Hatchers' mailing address, which was given as 401 S. Mt. Juliet Rd. #235-153, Mt. Juliet, Tennessee 37122. This address belonged to a postal box at a local UPS store where the Hatchers received their mail rather than an actual home or business address. Upon delivery of the summonses, Ms. Koop, a UPS employee, accepted the certified mail and signed the return receipt cards. Cored takes the position that Ms. Koop, as an employee at the location where the Hatchers receive their mail, constitutes an agent for the purposes of accepting service of process on behalf of the Hatchers. The Hatchers instead argue that Ms. Koop was never authorized or appointed by law to serve as an agent for the purpose of accepting service of process on their behalf.

Tennessee Rule of Civil Procedure 4.04(10) provides that a plaintiff is permitted to serve a summons and a complaint upon a defendant via mail. However, Rule 4.03(2) plainly requires the signature of the defendant or by a person designated under Rule 4.04 or statute for service to be complete. Cored asserts that Ms. Koop's signature on the return receipt cards constitutes complete service because she accepted the envelopes as an agent for the Hatchers. However, there is nothing in the record on appeal reflecting an authorization by appointment by the Hatchers or by law making Ms. Koop their agent for the purpose of accepting service of process.

Moreover, the Hatchers submitted four declarations with their motion to dismiss, including one from Ms. Koop, stating that "at no time" was she ever authorized by the Hatchers to be their agent for accepting service of process. Although the initial motion was denied by the trial court to give Cored an opportunity to conduct discovery on this issue, it failed to present any countervailing declarations or affidavits contradicting the assertions in the Hatchers' declarations.

Once Cored became aware that service of process was a concern, per the Hatchers' Answer to its Complaint in October of 2018, it still had the opportunity to obtain reissuance of service of process and to utilize one of the other methods to obtain service available to it under Rule 4.04. However, Cored never attempted to seek reissuance of service of process and obtain proper service on the Hatchers despite the fact that there was still substantial time remaining to do so. Because Cored failed to obtain issuance of new process within one year from the date of the issuance of the previous process, the one-year statute of limitations on its TCPA claim was not tolled and ultimately ran.

*Whether the Hatchers Waived the Defense of Insufficient Service of Process*

Cored's next argument is that the Hatchers should be estopped from arguing insufficiency of service of process based on the Hatchers' conduct in this case. As we perceive it, this argument advances two points of contention. As an initial matter, Cored asserts that the Hatchers' mere participation in this litigation evidences a waiver of their insufficiency of service of process defense.

As to this concern specifically, Cored argues that the Hatchers waived any right to argue insufficient service of process as a defense because they "participated in discovery, made agreements through their counsel with [Cored's] counsel, and moved for a scheduling order or, in the alternative, to set the case for trial." Cored's position is that by filing a motion for a scheduling order or, in the alternative, setting the case for trial, the Hatchers "unequivocally recognized that [Cored's] claims against [the Hatchers] were properly pending" and therefore cannot assert an affirmative defense of insufficient service of process. Contrary to Cored's argument, however, "Tennessee courts have 'consistently held that participating in litigation does not constitute a waiver of insufficient service of process after the defense has been properly pled in an answer.'" *Webster v. Isaacs*, No. M2018-02066-COA-R3-CV, 2019 WL 3946093, at *6 (Tenn. Ct. App. July 9, 2019) (quoting *Krogman v. Goodall*, No. M2016-01292-COA-R3-CV, 2017 WL 3769380, at *8 (Tenn. Ct. App. Aug. 29, 2017) (citations omitted)). Here, as we have already noted, the Hatchers filed an answer in October of 2018, specifically raising insufficiency of service of process as an affirmative defense.

Cored cites a string of Tennessee cases holding that a defendant's subsequent conduct in a case effectively waived any argument concerning insufficiency of service of process, but these cases can be distinguished from the present case. For example, Cored's

reliance on *Faulks v. Crowder*, 99 S.W.3d 116 (Tenn. Ct. App. 2003), is respectfully misplaced. As the Hatchers point out in their brief, *Faulks* involved a service of process issue where process was reissued and attempted a second time. *Id*. at 124-26. After service of process was attempted a second time, the defendant filed an answer and did not raise the defense of insufficient service of process. *Id*. Instead, she waited nearly two years after the filing of her answer to raise the issue. *Id*. As a result, this Court deemed defendant to have waived the defense. *Id*. There are no similar facts present in this case. Here, Cored did not reissue process within the time permitted by Tennessee Rule of Civil Procedure 3 or at any time. The Hatchers timely filed their Answer in which they asserted the affirmative defense of insufficient service of process. Because the Hatchers properly plead the defense in their Answer, the actions taken by them subsequent to this Answer did not waive this defense.

In addition to its argument regarding the Hatchers' participation in the lawsuit, Cored argues that the Hatchers should be estopped from asserting the insufficiency of service of process defense by pointing to their failure to respond to alleged discovery requests. Specifically, Cored points to the Hatchers' purported bad faith conduct as to why estoppel is appropriate here. In its brief, Cored states that it served interrogatories on the Hatchers in February of 2019 and did not receive a response. Cored claims that during a Local Rule 22 conference,[7] the Hatchers' counsel agreed to serve their responses to the interrogatories by June 10, 2019. However, the Hatchers' counsel disputes this in their reply brief. Because the record on appeal does not contain either the interrogatories in question or a record of any purported agreement between the parties, we cannot consider what may have been agreed upon as to the interrogatories, the exact information that was sought or the relevance it might have as to Cored's failure to have process reissued during the approximately eight-month period it had to do so.

The record does make clear, however, that Cored failed to make any effort to reissue service. Regardless of any alleged bad faith conduct on part of the Hatchers, it was not necessary for Cored to receive the responses to these alleged interrogatories prior to reissuing process and thereby tolling the running of the statute of limitations or availing itself of the other avenues of service of process provided for in Rule 4.04. Our review of the record on appeal reflects that Cored took no further action to remedy the insufficient service of process on the Hatchers, and the trial court entered its order in favor of the Hatchers on December 12, 2019. Based on the record before us and for the reasons stated above, we reject Cored's position that the Hatchers should be estopped from asserting the defense of insufficient service of process.

*Whether the Hatchers Waived Their Right to a Statute of Limitations Defense*

Cored also argues that the Hatchers waived their right to plead the statute of

---

[7] In Davidson County, a Local Rule 22 conference pertains to discovery and motions related to discovery.

limitations as a defense under the TCPA. Specifically, Cored asserts that, because the Hatchers failed to assert the statute of limitations as an affirmative defense in their initial Answer in October of 2018, it was waived.

In general, Rule 12.02 of the Tennessee Rules of Civil Procedure requires "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required," although it also permits certain defenses to be made, at the option of the pleader, by a motion in writing. Tenn. R. Civ. P. 12.02. Moreover, pursuant to Rule 12.08, "[a] party waives all defenses and objections which the party does not present either by motion as hereinbefore provided, or, if the party has made no motion, in the party's answer or reply." Tenn. R. Civ. P. 12.08. Since the statute of limitations is specifically enumerated as an affirmative defense, it must generally be pled in response to a preceding pleading or risk waiver of the defense. *See* Tenn. R. Civ. P. 8.03.

Cored argues that the Hatchers failed to plead the statute of limitations as an affirmative defense in their Answer filed in October of 2018. Furthermore, Cored asserts that the Hatchers never requested leave from the trial court, nor did they seek permission to assert the statute of limitations as a defense subsequent to the filing of their Answer. Rather, the Hatchers filed a Motion to Dismiss on June 27, 2019, the day after the statute of limitations became a viable defense for them. In essence, Cored's argument is that the Hatchers should have been required to have pled the affirmative defense of the statute of limitations in their initial Answer in October of 2018, a full eight months before it became a viable defense.

However, Cored's argument misconstrues the requirements under Tennessee procedural law. Although Rule 12.02 plainly states that a defense to a claim for relief "shall be asserted" in a responsive pleading, the Rule permits certain defenses to be asserted at the option of the pleader by a motion. *See* Tenn. R. Civ. P. 12.02. Among these defenses is the failure to state a claim upon which relief can be granted. Tenn. R. Civ. P. 12.02(6). In this case, the statute of limitations was not a viable defense in October of 2018, when the Hatchers filed their Answer to Cored's Complaint. It did not become viable until June of 2019 due to Cored's failure to properly serve the Hatchers or otherwise toll the statute of limitations by seeking reissuance of the summonses within the time provided by Tennessee Rule of Civil Procedure 3. The Hatchers could not have waived a defense not yet available to them. Instead, once it became a viable defense, the Hatchers promptly filed a Motion to Dismiss under Rule 12.02(6), asserting that Cored failed to state a claim against them for which relief could be granted based on the running of the statute of limitations.

Furthermore, at oral argument, Cored's counsel could point to no Tennessee case law, nor has this Court found any, that supports the notion that a party waives a statute of limitations defense that is not yet viable if it is not pled by motion or in its responsive pleading. It is clear here that the Hatchers, upon the running of the statute of limitations,

immediately filed a Rule 12.02(6) motion arguing that the statute of limitations had run, and we, therefore, conclude that the defense was timely raised and not waived.

*Whether the Trial Court Erred by Not Exercising Its Discretion Under Rule 6.02*

Cored's final argument centers on its position that the trial court erred in not using its discretion pursuant to Tennessee Rule of Civil Procedure 6.02 to enlarge the time allotted for it to serve the Hatchers with process. Prior to granting the Hatchers' Renewed Motion, Cored requested the trial court, pursuant to Rule 6.02, to enlarge the time under Rule 3 to allow it to obtain issuance of new process in order to toll the statute of limitations based on excusable neglect. However, the trial court rejected Cored's arguments and denied the request.

> Rule 6.02 of the Tennessee Rules of Civil Procedure states as follows:
> When by statute or by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done, where the failure to act was the result of excusable neglect.

Tenn. R. Civ. P. 6.02. The Tennessee Supreme Court has adopted the United States Supreme Court's "comprehensive framework" in evaluating a party's claim for excusable neglect. *See Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006). There are four factors a deciding court must look at when determining whether a party's action or failure to act was the result of excusable neglect. These factors are: "(1) the risk of prejudice to parties opposing the late filing, (2) the delay and its potential impact on the proceedings, (3) the reasons why the filings were late and whether the reasons were within the filer's reasonable control and (4) the good or bad faith of the filer." *Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). This Court most recently approached this issue in *Webster v. Isaacs*, No. M2018-02066-COA-R3-CV, 2019 WL 3946093 (Tenn. Ct. App. Aug. 21, 2019). We noted that "this [C]ourt has 'held that the party's reason for failing to meet the deadline may be the single most important of the four factors.'" *Id.* at *3 (quoting *Kenyon v. Handal*, 122 S.W.3d 743, 756 (Tenn. Ct. App. 2003)). In analyzing this particular factor, a court should examine a party's reasons to determine "(1) whether the circumstances involved were under a party's own control, and (2) whether the party was paying appropriate attention to the matter in light of the surrounding circumstances." *Id.* (quoting *State ex rel. Sizemore v. United Physicians Ins. Risk Retention Grp.*, 56 S.W.3d 557, 569-70 (Tenn. Ct. App. 2001)). Furthermore, "[w]e review a trial court's decision to grant or deny a Tenn. R. Civ. P. 6.02 motion for enlargement under an abuse of discretion standard." *Id.* at *2 (citing *Williams*, 193 S.W.3d

- 12 -

at 551). "A trial court abuses its discretion when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Id*. (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citation omitted)). Therefore, as a reviewing court, we are not permitted "to substitute [our] judgment for that of the trial court." *Id*. (quoting *Williams*, 193 S.W.3d at 551).

The trial court in *Webster* determined that the first, second, and fourth factors as to excusable neglect had no significant impact on its determination, and it instead focused solely on the third factor. *Id*. at *3. In evaluating this third factor, the trial court determined that "serving [d]efendant and reissuing summons was within the reasonable control of [p]laintiffs' counsel, and counsel failed to pay attention to the delay" after the defendant's answer to the complaint put the plaintiffs on notice that he had not been served. *Id*. In that case, the defendant's answer was filed within the statute of limitations, allowing plaintiffs time to properly serve defendant and thus toll the statute of limitations. However, because plaintiffs failed to do so despite being put on notice of defect of service, the trial court found that this did not constitute excusable neglect under Rule 6.02. *Id.*

The appellants in *Webster* attempted to rely on *Edwards v. Herman*, No. E2017-01206-COA-R9-CV, 2018 WL 2231090 (Tenn. Ct. App. May 16, 2018). In *Edwards*, this Court concluded that a "trial court could properly utilize Tennessee Rule of Civil Procedure 6.02 to enlarge the timeframe for reissuance of service of process found in Rule 3 when the complaint was properly filed within the statute of limitations and based upon an adequate showing of 'excusable neglect.'"[8] *Id*. at *7 (citing *Maness v. Garbes*, No. M2008-007907-COA-R3-CV, 2009 WL 837707, at *2 (Tenn. Ct. App. Mar. 26, 2009)). However, in *Edwards*, the Court vacated the trial court's determination of the presence of excusable neglect due to insufficient findings and conclusions on the matter. *Id*. at *9. Therefore, like the *Webster* Court, we do not look to *Edwards* as "instructive on the application of

---

[8] In their brief, the Hatchers assert that allowing a trial court to exercise its discretion as permitted under Rule 6.02(2) based on excusable neglect to extend the time for service of process would be "an improper usurpation of the legislative branch" and would allow "trial courts discretion to extend/toll statutes of limitation at their discretion." Respectfully, this argument misinterprets Rule 6.02(2) and a trial court's discretion as permitted. Although there has yet to be a case where the court of appeals has upheld a trial court's extension of service of process due to excusable neglect, this is not to say it is not permitted. On the contrary, as discussed previously in this Opinion,

> [t]his Court has previously indicated that the deadline for reissuance and service of process contained in Tennessee Rule of Civil Procedure 3 can be extended, pursuant to Rule 6.02, in those instances when the complaint has been filed within the applicable statute of limitations but service of process was not timely effectuated due to excusable neglect.

*See Edwards*, 2018 WL 2231090, at *5. Furthermore, in *Webster*, this Court acknowledges the *Edwards* Court's affirmation of a trial court's utilization of Rule 6.02 to enlarge the timeframe for issuance of service of process, but we remanded the case because the trial court also failed to make adequate findings regarding excusable neglect. *Webster*, 2019 WL 3946093, at *4.

- 13 -

excusable neglect factors." *Webster*, No. 2019 WL 3946093, at *4. However, the facts in *Webster* are somewhat analogous to those presented here. There, the plaintiffs timely filed a negligence suit in November of 2016, stemming from a November 2015 accident. *Id*. at *1. Service of process, however, was insufficient, and the defendant appropriately plead insufficiency of service of process in his answer in January of 2017, thereby putting plaintiffs on notice of the defective service of process. *Id*. The plaintiffs failed to reissue their summons until January of 2018, well over a year past the date of the issuance of the previous summons in November of 2016, and had the defendant served the same day. *Id*. The defendant then filed a motion to dismiss arguing that the suit was time barred because the plaintiffs failed to timely serve the defendant with process. *Id.* In response, the plaintiffs filed a motion for enlargement under Rule 6.02 seeking to enlarge the 12-month time frame for obtaining new service of process set forth in Tenn. R. Civ. P. 3. *Id.* (footnote omitted). The trial court denied the motion, finding that excusable neglect was not present. *Id*. at *3. On appeal, the plaintiffs "acknowledged that their counsel's failure to investigate the lack of personal service sooner was negligent." *Id*. at *4. However, they argued that this negligence was excusable. *Id*. In so arguing, the plaintiffs noted that the initial return of service was not returned to their counsel, but rather to the court clerk, and that while they were put on notice by the pleading in defendant's answer of the affirmative defense of insufficiency of service of process, they were unaware of the date "upon which process was returned unserved." *Id.* However, this Court found no merit in the plaintiffs' argument, finding instead that the plaintiffs "failed to follow up with the process server or the trial court clerk to determine whether they needed to effectuate alias service; they had almost ten months to do so." *Id*.

Here, Cored simply restates the facts of its case and claims that it is entitled to "some repair work." It claims that there exist "numerous legitimate and good faith reasons" that lead to the need for an extension, some of which it concedes to be *within its own control*. However, based upon our review of the record and application of the present facts to the factors laid out in *Williams*, this Court cannot agree with Cored's interpretation of the facts.

As in *Webster*, the trial court in this case found that the first, second, and fourth factors as to excusable neglect have no significant impact. Instead, it found that the dispositive factor concerns the reasons why the filings were late and whether the reasons were within the filer's reasonable control. In analyzing this particular factor, a court should examine a party's reasons to determine "(1) whether the circumstances involved were under a party's own control, and (2) whether the party was paying appropriate attention to the matter in light of the surrounding circumstances." *Id*. at *3 (quoting *State ex rel. Sizemore*, 56 S.W.3d at 569-70).

Based on the record before us, we conclude that the circumstances surrounding the service of process on the Hatchers were exclusively within Cored's control. It was put on notice in October of 2018, based on the Hatchers' Answer to its Complaint, that service was insufficient. It had eight months to obtain reissuance of service of process in order to

- 14 -

toll the statute of limitations but failed to do so. This was totally within its control. Any actions allegedly taken by the Hatchers, regardless of alleged bad faith, had no bearing on Cored's own ability to toll the running of the statute of limitations in this case. *See* Tenn. R. Civ. P. 3 ("If process remains unissued for 90 days or is not served within 90 days from issuance . . . the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations *unless the plaintiff continues the action by obtaining issuance of new process within one year from issuance of the previous process*[.]") (emphasis added). Nevertheless, Cored took no action. Clearly from the facts in this record there was neglect on the part of the plaintiff, but like the trial court, we conclude it was not excusable and further conclude that the trial did not abuse its discretion in denying Cored's request for enlargement under Rule 6.02.

### *Whether the Hatchers are Entitled to Fees Under Section 20-12-119(c)*

Next, we address the Hatchers' appeal of the trial court's decision not to award attorney's fees and costs pursuant to Tennessee Code Annotated section 20-12-119(c). Specifically, the Hatchers assert that because the trial court dismissed Cored's claims against them under a Rule 12 Motion to Dismiss, that they are entitled to such fees pursuant to the statute.

> Tennessee Code Annotated section 20-12-119(c)(1) states as follows: Notwithstanding subsection (a) or (b), in a civil proceeding, where a trial court grants a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief may be granted, the court shall award the party or parties against whom the dismissed claims were pending at the time the successful motion to dismiss was granted the costs and reasonable and necessary attorney's fees incurred in the proceedings as a consequence of the dismissed claims by that party or parties. The awarded costs and fees shall be paid by the parties whose claim or claims were dismissed as a result of the granted motion to dismiss.

Here, the trial court granted the Hatchers' renewed motion to dismiss for failure to state a claim which, on its face, is a Rule 12 motion. However, as discussed previously, when a trial court entertains matters outside the pleadings in making its decision, a motion to dismiss is converted to a motion for summary judgment. *See Patton*, 242 S.W.3d at 786 (citing *Pac. E. Corp.*, 902 S.W.2d at 952).

The Hatchers' renewed motion for judgment on the pleadings to dismiss the complaint for failure to state a claim under Rule 12.02(6) was treated by the trial court as a Rule 12 motion requesting dismissal. However, in its order granting the Hatchers' motion to dismiss, the trial court expressly references the "Declarations of the Hatchers, Carin Koop, and Myroslav Kuzmyn", filed in support of its motion, regarding the issue of agency for service of process. Because the trial court considered and relied upon the declarations

filed by the Hatchers in reaching its decision on the motion, the motion should have been converted by the trial court into a motion for summary judgment pursuant to Rule 56. *See Mitrano v. Houser*, 240 S.W.3d 854, 859 (Tenn. Ct. App. 2007) (citing *Hart v. Joseph Decosimo & Co., LLP*, 145 S.W.3d 67, 71 (Tenn. Ct. App. 2004)).

Although the trial court erred in failing to treat the Hatchers' Renewed Motion as one for summary judgment, "this Court may affirm the trial court's decision when rendered on different grounds." *See Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001) (citing *Wood v. Parker*, 901 S.W.2d 374 (Tenn. Ct. App. 1995)). Because the Hatchers' Renewed Motion should have been converted to a motion for summary judgment, it does not qualify as the motion referenced in the statute pursuant to which fees may be awarded. *See Craig v. Peoples Cmty. Bank*, No. E2016-00575-COA-R3-CV, 2016 WL 7495185, at \*4 (Tenn. Ct. App. Dec. 30, 2016) ("Consequently, the matter was correctly treated as a motion for summary judgment. The Bank's motion for fees and costs under Tenn. Code Ann. § 20-12-119(c) was correctly denied, because the motion was not properly considered as a motion to dismiss under Tenn. R. Civ. P. 12.02(6)."). We, therefore, conclude that the trial court reached the correct result on the attorney's fees issue and affirm its refusal to award attorney's fees and costs "irrespective of the reasons stated." *Wood*, 901 S.W.2d 374, 378 (quoting *Clark v. Metropolitan Gov't of Nashville and Davidson County*, 827 S.W.2d 312, 317 (Tenn. App. 1991)).

*Whether Cored's Appeal is Frivolous*

Lastly, we address the Hatchers' contention that they are entitled to damages pursuant to Tennessee Code Annotated section 27-1-122 for a frivolous appeal. Under this statute, damages may be recovered on the following terms:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. Determining whether to award damages pursuant to Tennessee Code Annotated section 27-1-122 "is a discretionary decision." *Young*, 130 S.W.3d at 66-67 (citing *Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn. 1985)). In its brief, the Hatchers argue that Cored's arguments asserted in its appeal are "completely meritless." A frivolous appeal is one that is "devoid of merit" or "has no reasonable chance of succeeding." *Id*. at 67 (citations omitted). Although Cored was not successful on appeal, we cannot say that the appeal was "totally devoid of merit." As such, we decline to award the Hatchers damages pursuant to Tennessee Code Annotated section 27-1-122.

## CONCLUSION

Although we affirm the trial court's order, finding that the statute of limitations had run against any claim that Cored may have had against the Hatchers under the TCPA, we decline to award the Hatchers attorney's fees under Tennessee Code Annotated section 20-12-119(c) as the motion to dismiss should have been converted to a motion for summary judgment pursuant to Rule 56.04. Furthermore, because we do not conclude that Cored's appeal was frivolous, we decline to award the Hatchers any damages pursuant to Tennessee Code Annotated section 27-1-122.

_____
ARNOLD B. GOLDIN, JUDGE