IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 19, 2021 Session

## HELEN SHAW AS ADMINISTRATOR FOR THE ESTATE OF JOHN SUTTLE v. LAWRENCE B. GROSS MD ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-004166-15  Valerie L. Smith, Judge**

_____

**No. W2019-01448-COA-R3-CV**

_____

Appellant appeals the dismissal of her health care liability complaint on the basis of the expiration of the applicable statute of limitations. Because Appellant did not substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E), she was not entitled to an extension on the statute of limitations. The trial court's decision that her complaint should be dismissed is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and CARMA DENNIS MCGEE, JJ., joined.

Shantell S. Suttle, Cordova, Tennessee, for the appellant, Helen Shaw, as Administrator for the Estate of John Suttle.

John C. Ryland and Amy Worrell Sterling, Memphis, Tennessee, for the appellee, Lawrence B. Gross, M.D.

Buckner Wellford, Memphis, Tennessee, Methodist Healthcare Memphis Hospital.

## OPINION

### I.    FACTUAL AND PROCEDURAL BACKGROUND

On May 17, 2014, John Suttle ("Decedent") presented at the emergency room of Defendant/Appellee Methodist Healthcare Memphis Hospital ("the Hospital"). The same

day, Defendant/Appellee Lawrence B. Gross, M.D. (together with the Hospital, "Appellees") ordered and reviewed lab work, then diagnosed Decedent with dehydration and released him. The next day Decedent returned to the emergency room via ambulance and was diagnosed with sepsis[1] and choloecystitis.[2] Decedent died on June 14, 2014. On June 18, 2014, an autopsy report confirmed sepsis and gangrenous choloecystitis.

On June 5 and July 29, 2015, Plaintiff/Appellant Helen Shaw, as administrator of Decedent's Estate ("Appellant") sent pre-suit notice of a potential claim to the Hospital's physical address and its registered agent for service of process. On June 5, 2015, Appellant also mailed notice to Dr. Gross at Methodist North Hospital, the hospital listed on the Tennessee Department of Health website for Dr. Gross's practice. On June 5, 2015, June 16, 2015, and July 29, 2015, Appellant mailed pre-suit notice to several of the Hospital's business addresses. In addition to the Hospital and Dr. Gross, pre-suit notice was mailed to nineteen other medical providers with distinct addresses throughout the city. Appellant thereafter filed her complaint on October 5, 2015, alleging that Dr. Gross was negligent and that the Hospital was vicariously liable for Dr. Gross's negligence.[3] The other providers that had been given pre-suit notice were not named in the complaint.

On March 8, 2016, Dr. Gross filed a motion to dismiss/motion for summary judgment. Therein, Dr. Gross argued that Appellant's claim was barred by the applicable statute of limitations and for failure to comply with pre-suit notice requirements. On August 10, 2016, the Hospital joined in Dr. Gross's motion. The trial court initially granted the motion on the basis of the expiration of the statute of limitations. That decision, however, was reversed in part and vacated in part by this Court. *See* ***Shaw v. Gross***, No. W2017-00441-COA-R3-CV, 2018 WL 801536 (Tenn. Ct. App. Feb. 9, 2018).

Upon remand, Appellees separately renewed their motions to dismiss based upon Appellant's failure to comply with pre-suit notice requirements. Dr. Gross argued that the notice sent to him was accompanied by an incomplete medical authorization purporting to authorize Dr. Gross to obtain medical information only from the Hospital. According to Dr. Gross, however, this release was defective due to missing information. Specifically, Dr. Gross alleged that the medical authorization did not specify the documents that could be disclosed, as it did not have certain necessary boxes checked detailing the documents and information to be disclosed, did not contain necessary language required by the applicable regulations,[4] and did not include a description of the authority of the person who

---

[1]Sepsis is defined as "infection; contamination." *Mosby's Dictionary of Medicine, Nursing, & Health Professions* 1624 (9th ed. 2013).

[2]Cholecystitis is defined as "acute inflammation of the gallbladder." *Mosby's Dictionary of Medicine, Nursing, & Health Professions* 351 (9th ed. 2013).

[3] The complaint and pre-suit notices were sent by a different attorney than the attorney representing Appellant in this appeal.

[4] Specifically, Dr. Gross argued that the authorization lacked "required statements" under 45 C.F.R. § 164.508(c)(2) concerning the ability or inability to condition payment or enrollment or eligibility for

executed the release in violation of 45 C.F.R. § 164.508(c)(1). Dr. Gross asserted, moreover, that he received no authorizations allowing him to obtain records from any of the other nineteen recipients of pre-suit notice. According to Dr. Gross, this "glaring deficiency, in and of itself, mandate[d] the dismissal of [Appellant's] lawsuit."

The Hospital made similar arguments in its motion to dismiss. Indeed, the Hospital noted that the only medical release that it received purported to release only those records held by the Hospital. Thus, the Hospital argued that it received no medical authorizations for the other twenty medical providers who received pre-suit notice, including Dr. Gross. Moreover, like Dr. Gross, the Hospital argued that the medical release it received was deficient due to the omission of several required elements. The Hospital further argued that notice was not properly mailed to it.

Following the renewal of Dr. Gross's motion to dismiss, Appellant sought to amend her complaint to allege that Decedent was treated only by doctors and providers at the Hospital. Although Appellees objected, the trial court granted Appellant leave to file the amended complaint. In relevant part, the amended complaint alleges that "[a]ll doctors and providers to include [Dr.] Gross only saw and treated [Decedent] at Methodist Hospital." Both Appellees then filed answers to Appellant's amended complaint, denying the material allegations contained therein.

Appellant also responded in opposition to the renewed requests for dismissal. Therein, Appellant asserted that the one provider exception to pre-suit notice recognized in ***Bray v. Khuri***, 523 S.W.3d 619 (Tenn. 2017), was applicable because (1) Dr. Gross and the Hospital should be considered a single provider; and (2) the amended complaint, which was to be taken as true, alleged that Decedent was only treated by the various medical providers at the Hospital. Appellant further argued that the other alleged violations were technical and non-prejudicial.

A hearing was held on the renewed motions to dismiss on May 1, 2019. The trial court thereafter entered a written order granting the motions on July 11, 2019. Therein, the trial court ruled that Appellant had failed to substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E) by failing to "check any boxes in section 3 of the form containing a description of the information to be used or disclosed" and because the authorization was "signed by someone other than the patient and contains no description of that person." As such, the trial court dismissed Appellant's complaint. This appeal followed.

## II.    ISSUES PRESENTED

Appellant raises a single issue: Whether the trial court erred when it granted the

---

benefits on the execution of the authorization.

motions to dismiss of Dr. Gross and the Hospital.

### III. STANDARD OF REVIEW

Appellees properly filed motions to dismiss this healthcare liability action based upon Appellant's noncompliance with Tennessee Code Annotated section 29-26-121. Our Supreme Court has instructed that the proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29-26-121 is to file a motion to dismiss pursuant to Rule 12.02 of the Tennessee Rules of Civil Procedure. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012). The trial court's grant of the motion to dismiss is subject to a de novo review with no presumption of correctness, because we are reviewing the trial court's legal conclusion. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *J.A.C. by and through Carter v. Methodist Healthcare Memphis Hosps.*, 542 S.W.3d 502, 509 (Tenn. Ct. App. 2016). Although the trial court considered certain matters outside the complaint, it is undisputed that those documents were attached to Appellant's complaint at filing. *See generally* Tenn. R. Civ. P. 10.03 (explaining that documents required to be attached to pleadings "shall be a part of the pleading for all purposes"); *see also* Tenn. Code Ann. § 29-26-121(b) (stating that a plaintiff asserting a health care liability claim "shall provide the documentation specified in subdivision (a)(2)," i.e., the pre-suit notice, including the HIPAA authorization, as an attachment to the complaint). Therefore, the motions to dismiss were not converted into motions for summary judgment.

### IV. ANALYSIS

We begin with the express requirements of the Tennessee Health Care Liability Act ("THCLA"). First, Tennessee Code Annotated section 29-26-121(a) provides that "any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state." Moreover, "[w]hen notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider." Tenn. Code Ann. § 29-26-121(c).

One of the required elements of the notice is a "HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice." Tenn. Code Ann. § 29-26-121(a)(2)(E). "Because HIPAA itself prohibits medical providers from using or disclosing a plaintiff's medical records without a fully compliant authorization form, it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." *Stevens ex*

*rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 555 (Tenn. 2013) (citing 45 C.F.R. § 164.508(a)(1) ("[A] covered entity may not use or disclose protected health information without an authorization that is valid under this section.")); *see also* Tenn. Code Ann. § 29-26-121(d)(1) ("All parties in an action covered by this section shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice[.]").

Here, Appellees contend that Appellant failed to comply with section 29-26-121(a)(2)(e) in two respects. First, they assert that they were not provided any authorizations for at least the other nineteen medical providers who received pre-suit notice. Second, they assert that the medical authorizations that were provided were missing required "core elements" and were therefore defective.[5] With regard to defective HIPAA authorizations, the Code of Federal Regulations provides that:

> (2) Defective authorizations. An authorization is not valid, if the document submitted has any of the following defects:
>
> * * *
>
> (ii) The authorization has not been filled out completely with respect to an element described by paragraph (c) of this section . . . .

45 C.F.R. § 164.508(b). Paragraph (c) further provides, as relevant to this appeal:

> A valid authorization under this section must contain at least the following elements:
>
> (i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.
> (ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.
> (iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.
> (iv) A description of each purpose of the requested use or disclosure. The statement "at the request of the individual" is a sufficient description of the purpose when an individual initiates the authorization and does not, or elects not to, provide a statement of the purpose.

---

[5] Appellees also asserted that certain "required statements" were missing. *See* 45 C.F.R. § 164.508(c)(2) (detailing the "required statements" that "must" be included in a medical authorization in addition to the "core elements"). The trial court did not specifically address this argument. Because of the resolution of this appeal, we likewise decline to address it.

- 5 -

(v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure. The statement "end of the research study," "none," or similar language is sufficient if the authorization is for a use or disclosure of protected health information for research, including for the creation and maintenance of a research database or research repository.
(vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

45 C.F.R. § 164.508(c)(1). The Tennessee Supreme Court has recognized that the above six requirements are "core elements" of a HIPAA compliant medical authorization and that the omission of any one core element "may render a medical authorization noncompliant with HIPAA and ineffective 'to enable defendants to obtain and review a plaintiff's relevant medical records.'" ***Martin v. Rolling Hills Hosp., LLC***, 600 S.W.3d 322, 332 (Tenn. 2020) (quoting ***Stevens***, 418 S.W.3d at 555).

Because it is dispositive of this appeal, we begin with Appellees' argument that the HIPAA authorizations were not valid because of Appellant's failure to provide authorizations as to all necessary entities, as required by section 29-26-121(a)(2)(E). In determining this issue, we must keep in mind that perfect compliance is not required. According to our supreme court,

A plaintiff's less-than-perfect compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E), however, should not derail a healthcare liability claim. Non-substantive errors and omissions will not always prejudice defendants by preventing them from obtaining a plaintiff's relevant medical records. Thus, we hold that a plaintiff must substantially comply, rather than strictly comply, with the requirements of Tenn. Code Ann. § 29-26-121(a)(2)(E) . . . . [Section 29-26-121(a)(2)(E)] serve[s] an investigatory function, equipping defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early discovery of potential co-defendants and early access to a plaintiff's medical records.

***Stevens***, 418 S.W.3d at 554. Substantial compliance still requires that medical authorizations must sufficiently enable defendants to obtain and review relevant medical records. ***Id.*** at 555. Normally, HIPAA prevents medical providers from using a plaintiff's medical records without a fully compliant authorization form, and "a reviewing court should consider the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." ***Id.*** at 556. When the plaintiff does not substantially comply with section 29-26-121(a)(2)(E), he or she is not entitled to the 120-day extension on the statute of limitations, and his or her complaint may be subject to dismissal on the basis of the expiration of the statute of limitations. ***Martin***, 600 S.W.3d at 325 ("As a result of this noncompliance with Section 121(a)(2)(E), the

plaintiffs were not entitled to the 120-day extension of the statute of limitations.").

Our supreme court recently explained the proper framework for evaluating this issue:

> A defendant seeking to challenge a plaintiff's compliance with Section 121 must file a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim. See Myers v. AMISUB (SFH), Inc., 382 S.W.3d 300, 307 (Tenn. 2012). A defendant's Rule 12.02(6) motion must include allegations that identify the plaintiff's noncompliance and explain "the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc., 418 S.W.3d 547, 556 (Tenn. 2013). One means of satisfying this burden is to allege that a plaintiff's Section 121(a)(2)(E) medical authorization lacks one or more of the six core elements federal law requires for compliance with [HIPAA]. Once a defendant files a Rule 12.02 motion that satisfies this prima facie showing, the burden then shifts to the plaintiff either to establish substantial compliance with Section 121—which includes the burden of demonstrating that the noncompliance did not prejudice the defense—or to demonstrate extraordinary cause that excuses any noncompliance.

*Martin*, 600 S.W.3d at 325. Thus, prejudice is an important element in determining whether substantial compliance was met. *Id.* at 333 ("[P]rejudice is not a separate and independent analytical element; rather, . . . prejudice is a consideration relevant to determining whether a plaintiff has substantially complied."). In determining whether prejudice exists, we keep the following guidance in mind:

> If a plaintiff's noncompliance with Section 121 frustrates or interferes with the purposes of Section 121 or prevents the defendant from receiving a benefit Section 121 confers, then the plaintiff likely has not substantially complied with Section 121. On the other hand, if the plaintiff's noncompliance neither frustrates or interferes with the purposes of Section 121 nor prevents a defendant from receiving a benefit the statute confers, then a court is more likely to determine that the plaintiff has substantially complied.

*Id.* at 334 (citation omitted) (citing *Stevens*, 418 S.W.3d at 563 (noting that the focus should be "on the extent of the shortcomings and whether those shortcomings have frustrated the purpose of the statute or caused prejudice to the adversary party")).

Here, Appellant provided Dr. Gross with an authorization that ostensibly allowed him to obtain Decedent's records from the Hospital. Appellant provided the Hospital with

an authorization that allowed the Hospital to obtain records only from the Hospital. Appellees asserted that there were a number of defects in the authorizations,[6] not the least of which was the fact that there was no authorization for the Hospital to obtain records from Dr. Gross or for either Appellee to obtain records from any of the other nineteen providers that had been sent pre-suit notice. According to Appellees, this failure caused prejudice to them in that they were not permitted to access the records of the other providers given notice as required by the express language of section 29-26-121(a)(2)(E). *See* **Dial v. Klemis**, No. W2019-02115-COA-R3-CV, 2020 WL 6393393, at *1 (Tenn. Ct. App. Nov. 2, 2020), *perm. app. denied* (Tenn. March 23, 2021) (holding that this failure was not substantially compliant with section 29-26-121(a)(2)(E), and that, as a result, the complaint was barred by the applicable statute of limitations).

Appellant contends, however, that she was not required to provide HIPAA-compliant authorizations because this case falls within the one-provider exception recognized by the Tennessee Supreme Court in **Bray v. Khuri**, 523 S.W.3d 619 (Tenn. 2017). As our supreme court explained,

> based on the clear and unambiguous language of section 29-26-121(a)(2)(E), a plaintiff need not provide a HIPAA-compliant authorization when a single healthcare provider is given pre-suit notice of a healthcare liability claim. The authorization only allows a potential defendant to obtain the prospective plaintiff's medical records from any other healthcare provider also given notice and identified as a potential defendant in the pre-suit notice. This authorization requirement is consistent with section 29-26-121(d)(1), which specifies that all parties to a healthcare suit "shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice" and that the claimant complies with this requirement by providing a HIPAA-compliant medical authorization with pre-suit notice. *Id.*, § 29-26-121(d)(1).

**Bray**, 523 S.W.3d at 622. According to Appellant, Dr. Gross and the Hospital should be considered one entity for purposes of HIPAA because they were engaged in joint activity under an Organized Health Care Arrangement ("OHCA"), and all relevant records were held by the Hospital.

---

[6] The other defects included failing to include "required statements," failing to state the authority of the person signing the release, and failing to designate the type of information to be used or disclosed. The trial court concluded that the latter two defects constituted a failure to substantially comply with the statute. *See generally* **Williams v. Gateway Med. Ctr.**, No. M2018-00939-COA-R3-CV, 2019 WL 1754692, at *5–6 (Tenn. Ct. App. Apr. 18, 2019), *perm. app. denied* (Tenn. Sept. 18, 2019) (considering, in a split decision with a separate opinion from each panel-member, whether a failure with regard to the description of the record demonstrates that a plaintiff did not substantially comply with section 29-26-121(a)(2)(E)). Due to our resolution of this appeal, we do not reach this issue.

In contrast, Appellees contend that the ***Bray*** exception is inapplicable in this case because Dr. Gross and the Hospital do not constitute a single provider.[7] Moreover, Appellees point out that a total of nineteen providers beyond those named in the complaint were provided pre-suit notice and Appellant does not allege that any of these providers were engaged in an OHCA with Appellees. According to Appellees, this deficiency is alone dispositive of this appeal. We agree. Even setting aside the question of whether Dr. Gross and the Hospital are distinct providers for purposes of determining HIPAA compliance,[8] we conclude that Appellant still failed to substantially comply with section 29-26-121(a)(2)(E).

Following the decision in ***Bray***, a number of panels of this Court have been called upon to determine whether substantial compliance was met under highly analogous circumstances to those present in this case. First, in ***Rush v. Jackson Surgical Assocs. PA***, No. W2016-01289-COA-R3-CV, 2017 WL 564887 (Tenn. Ct. App. Feb. 13, 2017), *perm. app. denied* (Tenn. June 8, 2017), the defendants moved to dismiss the plaintiff's complaint because "the HIPAA authorization did not permit each health care provider the opportunity to obtain the complete medical records of each of the providers being sent notice." *Id.* at *1. The trial court dismissed the complaint and the plaintiff appealed to this Court. *Id.*

On appeal, the plaintiff asserted that while Bolivar General Hospital was listed as a medical provider receiving pre-suit notice, the plaintiffs mistakenly believed that the hospital was a registered agent for service of process for one of the other defendants, that the hospital was provided notice in an abundance of caution, and that the plaintiff patient never received treatment at the hospital. *Id.* at *3. The plaintiffs therefore argued that there were no relevant records to be obtained by the defendants. *Id.* The Court of Appeals disagreed. First, it noted that Bolivar General Hospital was listed as one of the plaintiff patient's health care providers in the pre-suit notice. *Id.* Moreover, the plaintiffs did not reveal to the defendants that they believed the hospital was a registered agent for service of process for another defendant until after the motion to dismiss was filed. *Id.* As such, the defendants "did not know, during the pre-suit notice phase, that Bolivar General did not have relevant medical records." *Id.* As the Court further explained:

> Tennessee Code Annotated [s]ection 29-26-121(d) clearly states that "[a]ll parties . . . shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice." Tenn. Code Ann. § 29-26-121(d). It is undisputed that Appellants did not provide a HIPAA-compliant medical authorization to either of the [defendants] so as to allow

---

[7] In particular, Appellees contend that this argument was waived where it was not raised in the trial court. Moreover, the Hospital asserts that there is no evidence that Dr. Gross and the Hospital were actually participating in an OHCA during the relevant time frame. Based on our resolution of this appeal, *infra*, we need not address these arguments.

[8] This Opinion therefore expresses no opinion as to the correctness of Appellant's argument that Dr. Gross and the Hospital should be considered a single provider for purposes of HIPAA.

> them to request records from Bolivar General Hospital, Inc. The very purpose of Tennessee Code Annotated [s]ection 29-26-121(a)(2)(E) is "to equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records." *Stevens,* 418 S.W. 3d at 555.

*Rush*, 2017 WL 564887, at *3. The Court held that this failure, coupled with several other deficiencies, was sufficient to demonstrate a lack of substantial compliance with the pre-suit notice content requirements and to show that the defendants were prejudiced by that failure. *Id.* at *5. As such, we affirmed the dismissal of the complaint.

We reached the same result in a reported case filed less than two years later. *See Moore-Pitts v. Bradley*, 605 S.W.3d 24 (Tenn. Ct. App. 2019), *perm. app. denied* (Tenn. April, 16, 2020). In *Moore-Pitts*, the defendant again filed a motion to dismiss the complaint on the basis that he did not receive a HIPAA authorization to obtain the medical records from the forty other providers who received pre-suit notice. *Id.* at 27–28. The trial court found that the HIPAA authorizations were not substantially compliant and dismissed the complaint on the basis of the expiration of the statute of limitations. *Id.* at 28.

On appeal, we first held that the plaintiffs' failure to name the identity of the individual or entity authorized to make the disclosure of medical records to the defendant constituted a violation of "an essential element" necessary to ensure that the defendant was able to obtain records from the other providers given pre-suit notice. *Id.* at 31. This obvious deficiency "prevented [the d]efendant from obtaining the records for investigatory purposes prior to commencement of the action." *Id.* As such, we held that the defendant "was prejudiced by [the p]laintiffs' noncompliant medical authorization because the authorization was not sufficient to enable [the d]efendant to obtain [the plaintiff patient's] medical records from the other providers sent the pre-suit notice." *Id.*

The Court further rejected the plaintiffs' argument under *Bray* that they were not required to comply with section 29-26-121(a)(2)(E) because the lawsuit named only one defendant. Rather, we held that *Bray* stood for the proposition that "a HIPAA-compliant medical authorization is not required when a plaintiff sends pre-suit notice only to one provider, not when he or she files suit against only one provider." *Id.* at 32. Because the plaintiffs sent pre-suit notice to approximately forty providers, the *Bray* exception was not applicable. As we explained,

> According to [the p]laintiffs' appellate brief, they had provided notice to the other providers as a protective measure to allow [the p]laintiffs to further develop their investigation of potential claims. However, [the d]efendant was not permitted to investigate those claims against him due to the insufficiency of the medical authorization because he was unable to obtain [the plaintiff patient's] medical records from the other providers receiving notice as he

was entitled to do pursuant to [section] 29-26-121(a)(2)(E). With the multiple providers receiving pre-suit notice, [the d]efendant had no way to know that [the p]laintiffs would file suit against only him. Because pre-suit notice was sent to multiple providers, *Bray* supports [the d]efendant's position and not [the p]laintiffs'. As such, [the p]laintiffs cannot rely on the single potential defendant exception to excuse them from complying with section 29-26-121(a)(2)(E).

*Id.* at 32. Because the plaintiffs did not substantially comply with section 29-26-121(a)(2)(E), they could not rely on the extension to the applicable statute of limitations and their claim was time-barred. *Id.*

We came to the same conclusion in ***Owens v. Stephens***, No. E2018-01564-COA-R3-CV, 2020 WL 1888901 (Tenn. Ct. App. Apr. 16, 2020), *perm. app. denied* (Tenn. Sept. 16, 2020). In that case, we held that the plaintiffs failed to substantially comply with section 29-26-121(a)(2)(E) where they sent pre-suit notice to a number of entities, but did not give the defendants HIPAA authorizations to access any of those records.[9] *Id.* at *4. As we explained in ***Owens***,

[The d]efendants contend that for evaluation of the merits of a claim, the relevant statute does not limit the requirement of a HIPAA compliant authorization only to providers who a plaintiff will eventually sue or only from providers who a plaintiff unilaterally determines are in possession of relevant or helpful records. As explained by [the d]efendants, at the pre-suit notice stage, a defendant does not know which of the noticed providers a plaintiff may sue or which noticed providers possess records that would help in claim evaluation. Each noticed provider could possess relevant records. Without the ability to obtain these records, a defendant is prejudiced.
[T]he errant Authorizations prevented [the d]efendants from obtaining records for investigatory purposes prior to the action's start. As a result, we find that [the d]efendants were prejudiced by [the plaintiff's] noncompliance, as the Authorizations were not sufficient to allow [the d]efendants to obtain needed medical records from other providers sent a pre-suit notice. Like the trial court, we hold that [the plaintiffs] did not substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E).

*Id.* (citation omitted).

The plaintiffs asserted, however, that they not required to comply with section 29-26-201(a)(2)(E) because of the single provider exception outlined in *Bray*. *Id.* We again rejected this argument:

---

[9] The authorization in ***Owens*** actually only authorized the plaintiffs' law firm to receive records.

The present case before us is distinguishable from **Bray**. The **Bray** Court held that a HIPAA-compliant medical authorization is not required when a plaintiff sends pre-suit **notice** to only one provider, not when he or she ultimately files suit against only one provider. **Id.** (emphasis added). [The plaintiffs] sent pre-suit notice to a multitude of providers. [The d]efendants are not a "single provider" as in **Bray**; each provider holds individual licenses from the appropriate boards, and each provider records medical documents related only to their specific care of the patient. [The d]efendants were not able to investigate [the plaintiffs'] claims against them due to the insufficiency of the authorization given in the pre-suit notice.

**Id.** We therefore concluded that the statute of limitations was not extended and that the plaintiffs' claim was untimely. **Id.** at *5.

Finally, we note that this Court came to a similar conclusion even before the Tennessee Supreme Court addressed the issue in **Bray**. In **Dolman v. Donovan**, No. W2015-00392-COA-R3-CV, 2015 WL 9315565 (Tenn. Ct. App. Dec. 23, 2015), *perm. app. denied* (Tenn. May 6, 2016), five defendants were named in the complaint and three additional medical providers were given pre-suit notice. **Id.** at *1. The defendants moved to dismiss the complaint because they were not provided medical authorizations for every named defendant or any of the medical providers who were not named in the complaint, but were given pre-suit notice. A medical authorization was only provided to access the records of Methodist LeBonheur Hospital. The trial court agreed and granted the defendants' motion to dismiss.

On appeal, the plaintiff asked this Court to take judicial notice of the fact that all of the medical providers at issue were affiliates of Methodist LeBonheur Hospital. **Id.** at *4. We declined the plaintiff's invitation, noting that "sparse evidence regarding affiliation does not reveal the extent of [the defendants'] right of access to the hospital's records." **Id.** The plaintiff further argued that the defendants were not prejudiced by their failure to comply with section 29-26-121(a)(2)(E) "because no other relevant medical records existed other than those in possession of Methodist Hospital." **Id.** at *5. We also rejected this argument, noting that the defendants had not conceded that they were not prejudiced by their lack of access to the other providers' medical records. **Id.** (citing **Hughes v. Henry County Medical Center**, No. W2014-01973-COA-R3-CV (Tenn. Ct. App. June 9, 2015) (holding that substantial compliance was met where the defendants conceded that there was no actual prejudice in light of the fact that the other provider sent notice had no relevant medical records)). Instead, we credited the defendants' argument that "they do not know whether any of the other noticed providers have any relevant medical records because they were not given an opportunity to request or obtain records from each of the other noticed providers due to Appellants' failure to comply with the mandates of [] section 29-26-121(a)(2)(E)." **Id.** at *6. In the absence of specific evidence supporting a contrary

conclusion, we held that "[t]he record does not support [the plaintiff's] contention that the [the defendants] knew that the only relevant medical records were in the possession of Methodist LeBonheur Healthcare, or that [the defendants] were not prejudiced." ***Id.*** Consequently, the dismissal of the plaintiff's THCLA complaint was affirmed. ***Id.***

Turning to the facts of this case, we conclude that the trial court did not err in dismissing Appellant's case on the basis of Appellant's failure to substantially comply with section 29-26-121(a)(2)(E). In our view, this case is substantially similar to the above cases, and the facts here therefore mandate the same result. In this case, Appellant chose to send pre-suit notice to twenty-one different medical providers. Under section 29-26-121(a)(2)(E), Appellant was therefore required to provide a HIPAA compliant medical authorization allowing Appellees "to obtain complete medical records from each other provider being sent a notice[,]" i.e., each of the other nineteen medical providers. Tenn. Code Ann. § 29-26-121(a)(2)(E). There is absolutely no dispute in this case that neither Dr. Gross nor the Hospital received authorizations allowing them to obtain records from at least nineteen of the twenty-one medical providers who were provided pre-suit notice.[10] Thus, Appellant's failure to provide authorizations for the nineteen other providers interfered with the purpose of section 29-26-121(a)(2)(E) to provide defendants with the "'actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records.'" ***Rush***, 2017 WL 564887, at *3. (quoting ***Stevens***, 418 S.W. 3d at 555). Appellees were therefore denied a benefit conferred by the statute, sufficient to demonstrate prejudice. ***Martin***, 600 S.W.3d at 334; *see also* ***Dial***, 2020 WL 6393393, at *5 ("This absence of the Defendants' access to medical records from the other providers infringed upon the investigatory function that [] section 29-26-121(a)(2)(E) seeks to foster and was a clear deprivation of a benefit here that the statute confers."). And we must agree with Dr. Gross that this defect alone is sufficient to demonstrate that Appellant did not substantially comply with section 29-20-121(a)(2)(E). *Compare* ***Moore-Pitts***, 605 S.W.3d at 32 (considering multiple defects in the medical authorization); ***Rush***, 2017 WL 564887, at *3 (same), *with* ***Dial***, 2020 WL 6393393, at *5 (holding that the plaintiffs failed to substantially comply with section 29-20-121(a)(2)(E) solely as a result of their failure to provide the defendants with medical authorizations for all medical providers given notice); ***Owens***, 2020 WL 1888901, at *4 (same); ***Dolman***, 2015 WL 9315565, at *5 (same).

The burden therefore shifted to Appellant show substantial compliance, including that her actions did not prejudice Defendants. *See* ***Martin***, 600 S.W.3d at 325. The holding in ***Bray***, however, provides no support for Appellant's contentions. As we have repeatedly stated, the ***Bray*** exception is only applicable when only a single provider is given pre-suit notice. *See, e.g.*, ***Owens***, 2020 WL 1888901, at *4 ("The ***Bray*** Court held that a HIPAA-compliant medical authorization is not required when a plaintiff sends pre-suit **notice** to only one provider, not when he or she ultimately files suit against only one provider.").

---

[10] Again, the Hospital also asserts that it lacked access to Dr. Gross's records.

There is no dispute in this case that pre-suit notice was provided to a total of nineteen medical providers beyond the two medical providers that were ultimately named as defendants in this case.

Our conclusion is not altered by the allegations in the amended complaint that Decedent was only treated at the Hospital. As previously discussed, a similar argument was made and rejected in both *Dolman* and *Rush*. In both cases, the plaintiffs asserted that the only relevant medical records were held by a defendant for whom a medical authorization had been given. *See Rush*, 2017 WL 564887, at *3; *Dolman*, 2015 WL 9315565, at *5. We rejected the argument in both cases, concluding that the relevant time frame for determining the issue of prejudice was during the pre-suit investigative phase. *See Rush*, 2017 WL 564887, at *3 (holding that the plaintiff could not show a lack of prejudice or that they substantially complied with section 29-26-121(a)(2)(E) where the record showed that the defendants "did not know, *during the pre-suit notice phase*, that [the other medical providers] did not have relevant medical records") (emphasis added); *Dolman*, 2015 WL 9315565, at *5 (holding that the plaintiffs could not show that the defendants "knew" that the other providers did not have relevant records because they were not given an opportunity to investigate the records in the pre-suit time period).

The same is true in this case. Here, at the time that Appellees received pre-suit notice, they were each notified that twenty other providers were also being provided notice. They were not, however, provided access to the records of these providers during the pre-suit investigative phase. During that time, Appellees "had no way to know that [Appellant] would file suit against only [Appellees]." *Moore-Pitts*, 605 S.W.3d at 32. Instead, Appellant only sought to amend her complaint to allege that Decedent was seen only at the Hospital following the filing of Appellees' motions to dismiss.[11] Moreover, Appellees have never conceded that the other nineteen providers had no relevant records to investigate. *Cf. Dolman*, 2015 WL 9315565, at *5 (citing *Hughes*, 2015 WL 3562733, at *2).

And while it may be true that Appellant was only treated during this particular episode at the Hospital, this allegation alone does not establish that the other nineteen providers had no relevant records. *See Dial*, 2020 WL 6393393, at *5 ("[W]e reject [the plaintiff's] apparent contention that records held by the Stern Defendants are somehow irrelevant just because the subject procedure involving the decedent took place at Methodist Hospital."). It was Appellant's choice to give these providers pre-suit notice, indicating that they were somehow relevant to this litigation. And Appellant has submitted no affidavits or other evidence to demonstrate that these other providers had no relevant records related to the injuries at issue in this case, much less that Appellees knew this fact during the pre-trial investigatory phase. *See id.* at *4 (holding that the plaintiff did not meet

---

[11] The motion to amend was actually not filed until after the resolution of the first appeal, nearly two years following the filing of the complaint.

her burden to show a lack of prejudice resulted from the denial of access to records where the plaintiff did not offer "proof that the non-Methodist records were not, in fact, related to the" medical issue that caused the decedent's death); *Dolman*, 2015 WL 9315565, at *5 (holding that the record did not support the plaintiff's contention that the defendants knew all relevant records were held by the defendant hospital). As such, like the panel in *Rush*, we must conclude that Appellant's allegation that all treatment took place at the Hospital is insufficient to demonstrate that the denial of these providers' records during the pre-suit investigative phase was not prejudicial.

In sum, we conclude that Tennessee Code Annotated section 29-26-121(a)(2)(E) required that Appellant provide Appellees with HIPAA authorizations for the other nineteen medical providers who were given pre-suit notice. Appellees have shown that they were prejudiced by Appellant's failure and therefore satisfied their burden to show that Appellant failed to substantially comply with Tennessee Code Annotated section 29-26-121(a)(2)(E). Appellant, however, has not met her burden to show that she substantially complied with the section 29-26-121(a)(2)(E).[12] Because Appellant failed to substantially comply with section 29-26-121, she was not entitled to the 120-day extension on the one-year statute of limitations applicable in this case. *See Martin v*, 600 S.W.3d at 325; *see also* Tenn. Code Ann. § 29-26-116 ("The statute of limitations in health care liability actions shall be one (1) year[.]"). And, taking even the latest date by which Appellant argues that this cause of action accrued, her action was filed more than one year later.[13] Accordingly, although we rely on a different ground than was cited by the trial court in its order of dismissal, we nevertheless affirm the trial court's ultimate decision to dismiss Appellant's complaint. *See Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001) (citing *Wood v. Parker*, 901 S.W.2d 374 (Tenn. Ct. App.1995)) ("[T]his Court may affirm the trial court's decision when rendered on different grounds."). All other issues not specifically addressed are pretermitted.

## V.    CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed and this cause is remanded for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant Helen Shaw, as Administrator for the Estate of John Suttle, for which execution may issue if necessary.

---

[12] Another way to defeat a motion for summary judgment on the basis of a failure to substantially comply with Tennessee Code Annotated section 29-26-121 is to demonstrate extraordinary cause. *See Martin*, 600 S.W.3d at 325. This issue does not appear to have been raised in the trial court or on appeal. As such, we will not address it. *Cf. id.* at 336–37 (waiving extraordinary cause where the issue was not raised in the trial court and only mentioned "in passing" in the plaintiff's brief).

[13] Appellees contend that the latest date this action could have accrued was the date of Decedent's death, on June 14, 2014. Appellant contends that the claim accrued on June 18, 2014, when Decedent's autopsy report was released. We express no opinion as to the proper accrual date, as the October 5, 2015 complaint was filed more than a year after either date.

_s/ J. Steven Stafford_
J. STEVEN STAFFORD, JUDGE