IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 5, 2026

## CHARLES EDWARD COPELAND ET AL. v. SCG IV-KARCH'S CROSSING, LLC

**Appeal from the Circuit Court for Knox County**
**No. 3-254-22     Deborah C. Stevens, Judge**

_____

**No. E2025-01018-COA-R3-CV**

_____

This is an appeal from a premises liability, slip-and-fall claim against the owner of a shopping center. The husband slipped and fell while trying to get into his vehicle at a shopping center owned by the defendant company. The defendant filed a motion for summary judgment, which the trial court granted. The plaintiffs filed a motion to alter or amend, which the trial court denied. The plaintiffs appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., C.J., and ROY B. MORGAN, JR., SP.J., joined.

Glen R. Thompson, Knoxville, Tennessee, for the appellants, Charles Edward Copeland and Lu Ann Copeland.

Jamie K. Durrett and Kevin Flannery Francese, Nashville, Tennessee, for the appellee, SCG IV-Karch's Crossing, LLC.

## OPINION

### BACKGROUND

On September 8, 2022, Charles Edward Copeland ("Mr. Copeland") and his wife Lu Ann Copeland ("Mrs. Copeland") (together, "Plaintiffs") filed a negligence lawsuit in the Circuit Court for Knox County ("the trial court") against SCG IV-Karch's Crossing,

LLC ("Defendant").[1] Plaintiffs stated in their complaint that they were business guests of one of Defendant's lessees at Defendant's shopping center. Mr. Copeland is disabled, so Plaintiffs parked in a handicap parking space. Plaintiffs went inside an establishment at the shopping center. It began to rain while Plaintiffs were inside.[2] When Mr. Copeland returned to his vehicle and tried to get in, he slipped and broke his ankle in several places.[3] Plaintiffs alleged that, unbeknownst to them, Defendant placed the handicap parking space in a part of the parking lot that had a low spot next to a drainage area. According to Plaintiffs, the drain was insufficient, and water pooled near Plaintiffs' vehicle. Plaintiffs asserted that Defendant was negligent in the design of the parking lot; in failing to comply with the Americans with Disabilities Act (the "ADA"); in failing to post signs warning of the dangerous condition; and in failing to have a proper wastewater system. Mrs. Copeland also alleged loss of consortium. On October 6, 2022, the parties filed a joint stipulation in which they agreed that, to the extent that the complaint stated a claim for relief under the ADA, such claim was dismissed with prejudice without costs and fees to any party as against the other. On October 10, 2022, Defendant filed an answer to Plaintiffs' complaint.

On November 27, 2024, Defendant filed a motion for summary judgment. Defendant argued in its memorandum of law that Plaintiffs could not establish that a dangerous condition existed on its property or that it owed Plaintiffs a duty of care. Defendant argued further that any alleged defect was open and obvious and that Mr. Copeland's comparative fault precluded any recovery. Defendant filed a statement of undisputed material facts and transcripts of Plaintiffs' depositions.

On June 25, 2024, Mr. Copeland testified by deposition. Mr. Copeland, then 72 years old, stated that he fell approximately five other times before his fall at Defendant's shopping center. On the day of the underlying incident, Plaintiffs went to the Wild Boar to pick up a to-go dinner.[4] Mrs. Copeland drove and parked in a handicap parking space. Mr. Copeland had used a handicap parking tag for ten years. It rained during Plaintiffs' drive to the Wild Boar. When Plaintiffs arrived, they went inside the Wild Boar and stayed for less than half an hour. Mr. Copeland had a beer while he was inside. Plaintiffs then left the Wild Boar to return to their vehicle. Mr. Copeland stated that it was still raining at this point. Mr. Copeland testified to what happened when he tried to get back in his car: "We went to get in the car and I just fell. I slipped and fell." Mr. Copeland was on the

---

[1] Plaintiffs misspelled Defendant's name in their original complaint. On October 7, 2022, Plaintiffs filed an amended complaint correcting the spelling of Defendant's name.

[2] Testimony of the witnesses is inconsistent concerning when it was raining.

[3] Plaintiffs stated in their complaint that the underlying incident occurred on October 8, 2022. Plaintiffs later clarified that the underlying incident occurred on October 8, 2021.

[4] The Wild Boar is referred to in the record variously as the "Wild Boar Tavern" by Defendant and the "Wild Boar Grill" by Plaintiffs. Mr. Copeland testified that it is simply called the "Wild Boar."

passenger side of the vehicle and had just reached for the door. According to Mr. Copeland, he slipped in standing water. Mr. Copeland estimated that the water was six inches deep. It had stopped actively raining when Mr. Copeland slipped and fell. Mr. Copeland stated that he did not see the standing water before he stepped in it. A drain was located nearby. When asked if any water was draining through, Mr. Copeland replied: "I'm sure it was. But it was backed up." Mr. Copeland testified that his falls prior to the one at Defendant's shopping center were probably due to "balance." Mr. Copeland said that he has also fallen since the underlying incident.

Mrs. Copeland was deposed as well. Mrs. Copeland stated that Mr. Copeland has a handicap parking tag because he is a disabled veteran. Mrs. Copeland had not used the handicap parking space at issue before. According to Mrs. Copeland, she preferred two nearby spaces because they were wider. However, those spaces were taken. Plaintiffs went inside the Wild Boar and waited for their dinner. Mrs. Copeland said that Mr. Copeland had no more than two beers while waiting inside the Wild Boar. Plaintiffs then returned to their vehicle. Mrs. Copeland stated that it was not raining when she walked out of the Wild Boar. Mrs. Copeland testified to Mr. Copeland's fall as follows:

> I went around to put the food in the car. He was getting in on the passenger side. And I went to open my door to get in, after I put the food in the back seat, and he wasn't there, he had fell. So that's all I know until I walked around.

Mrs. Copeland said that the drain was covered in water, and she could not see it. Mrs. Copeland testified that she was later able to see the drain backed up. Mrs. Copeland could not remember whether the drain was clogged with debris.

On December 20, 2024, Plaintiffs filed a response to Defendant's motion for summary judgment. Plaintiffs argued among other things that Defendant owned the subject property and had a duty of care to invitees; failed to warn of the hazardous condition hidden on site; breached its duty of care by failing to maintain the premises in a safe condition; ignored safety regulations and failed to address the hazardous situation it knew or should have known would occur during heavy rain showers; and committed negligence per se by violating the ADA.[5] Plaintiffs argued further that no expert proof was needed to prove their case. Plaintiffs invoked the doctrine of res ipsa loquitur, or "the thing speaks for itself." *See Gilreath v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. E2015-02058-COA-R3-CV, 2016 WL 3435788, at *8 (Tenn. Ct. App. June 15, 2016). According to Plaintiffs, Mr. Copeland's injury was one that generally does not happen without negligence.

---

[5] While Plaintiffs stipulated early in the case that they were not pursuing any direct ADA claims, Plaintiffs allege violations of the ADA in support of a negligence per se claim.

Plaintiffs also responded to Defendant's statement of undisputed material facts and filed their own statement of undisputed material facts. Plaintiffs disputed the following of Defendant's facts:

[2. On October 8, 2021, it was raining throughout the day in Knoxville with thunderstorms in the afternoon.]
2. Plaintiffs do not agree with Statement No. 2 in its entirety. There exists a question as to when the rain ceased. [Mrs. Copeland] stated it was not raining when they walked out of the Wild Boar Grill.

***

[8. Because of the rain, there was water flowing to and through the stormwater drain, though it was backed up from the storm.]
8. Plaintiffs do not agree with Statement of Facts No. 8 as presented. There is no testimony that the drain was backed up at the time Plaintiffs exited their automobile to go into the Wild Boar.

[9. Neither Eddie Copeland nor Lu Ann Copeland noticed anything unusual about the parking spot both when parking and when entering Wild Boar Tavern.]
9. Plaintiffs disagree with Statement of Facts No. 9 as presented. Plaintiff Lu Ann Copeland testified in her deposition that the spot was "more narrow" than the other handicap parking spots.

***

[11. It was raining on Plaintiffs' 15-minute drive to the Wild Boar Tavern and still raining when Plaintiffs entered the Wild Boar Tavern.]
11. Plaintiffs disagree with Statement of Facts No. 11, and do not believe the proposed statement accurately reflects the testimony of the Plaintiff.

***

[14. Upon returning to the car, Plaintiff Eddie Copeland walked into water next to the drain and slipped.]
14. Plaintiffs do not agree with Statement of Facts No. 14, as it implies he slipped immediately upon reaching the automobile. His testimony was that he slipped while reaching for the door.

***

- 4 -

[16. Plaintiff Eddie Copeland does not know how deep the water was that he slipped on.]
16. Plaintiffs do not agree with Statement of Facts No. 16. Although he did not know the exact depth, he estimated the depth.

[17. Plaintiff Eddie Copeland did not see the water before he slipped.]
17. Plaintiffs do not agree with Statement of Facts as presented here.

[18. Plaintiff Eddie Copeland had fallen approximately five times prior to this incident because of issues with balance.]
18. Plaintiffs do not agree with Statement of Facts No.18. [S]ome of the falls were after the accident and at least 1 of the falls was the result of tripping over a door sill. Some of the falls were related to balance issue[s] with a boot or cast on his leg placed there during his recovery from the slip and fall.

(Internal record citations omitted).

On January 27, 2025, Defendant filed a reply in further support of its motion for summary judgment. Defendant disputed the following of Plaintiffs' material facts:

2. The other handicap parking spaces provided by Defendant for patrons are easier physically to get in and out of because they are more wide.

**RESPONSE: Defendant disputes this fact. This was the conjecture of the Plaintiff and not based in reality as the spaces are the same width.**

\*\*\*

4. The drain was under water and backed up at the time of the slip and fall.

**RESPONSE: Defendant disputes this fact. None of the cited passages states that this was the case nor that Plaintiffs perceived this to be the case at the time.**

(Internal record citations omitted).

On January 30, 2025, Plaintiffs filed their response to Defendant's reply in further support of its motion for summary judgment. Plaintiffs attached to their response an undated photograph of the handicap parking space; a guide to ADA accessibility standards for parking lots; a document from the Knox County Property Assessor's Office purporting

to show Defendant's ownership of the subject property;[6] and a statement by Mr. Copeland supplementing his response to an interrogatory.[7] In his statement, Mr. Copeland opined that the handicap parking space he slipped and fell in should not have been placed where it was. Mr. Copeland concluded his statement by making an oath that what he said was true and correct to the best of his knowledge, information, and belief. Mr. Copeland's statement was neither sworn to nor signed in front of a notary. Plaintiffs also filed a reply to Defendant's responses to their statement of undisputed material facts.

On March 26, 2025, the trial court entered an order granting Defendant's motion for summary judgment. The trial court found that "Plaintiffs provide no evidence, through expert testimony or otherwise, that the design of the parking lot created a dangerous condition." The trial court found further that "expert testimony is necessary to establish the standard of care as to appropriate placement, size, and design of parking lots, specifically their drainage areas, because these are matters that require technical and specialized knowledge." The trial court rejected Plaintiffs' ADA-based negligence per se claim on the ground that Plaintiffs failed to show how the handicap parking space was non-compliant with the ADA. In addition, the trial court found that "Plaintiffs have offered no evidence that Defendant's maintenance of the parking lot created a dangerous condition, aside from the sole occurrence at issue in this case." The trial court found further that "Plaintiffs have offered no further evidence of how long the drain was backed up such that Defendant should have been on notice of an alleged danger."

On April 25, 2025, Plaintiffs filed a motion to alter or amend the granted summary judgment pursuant to Tennessee Rule of Civil Procedure 59.04. Plaintiffs stated in part that "[a]n ordinary, average person could logically conclude that an obstruction placed near an accessible parking space by the landowner, which allowed rainwater to pool in the parking space, would create a hidden, hazardous, dangerous condition." Plaintiffs also asked the trial court to consider the late-filed depositions of Wild Boar patrons and fact witnesses Greg Cunningham ("Mr. Cunningham") and Dustin Long ("Mr. Long"). Plaintiffs explained that "although the witnesses may have been available, it was not believed, at that time, that testimony from parties other than the Plaintiffs would be

---

[6] Defendant has acknowledged owning the subject property throughout this matter.

[7] Mr. Copeland's statement read, in relevant part:

The handicap space provided and maintained by the defendant was placed adjacent to a stormwater drain. It had been raining on the day of the accident. The space was on a downhill slope and the water from it did not give adequate space to enter the car. The location of the space is on a slope and next to a stormwater drain. Rainfall had washed trash and oil from the parking lot down the slope. This severely restricted the ability of the drain to carry the water away and allowed the water to pool from the drain to my car. The handicap space should not have been put next to a stormwater drain. The space was so close to the curb and the drain that it created a hidden hazard. The handicap space should have been on level ground.

required to defeat the summary judgment motion." On May 16, 2025, Defendant filed a response in opposition to Plaintiffs' motion to alter or amend.

On June 17, 2025, the trial court entered an order denying Plaintiffs' motion to alter or amend. The trial court found that Mr. Cunningham's and Mr. Long's depositions did not constitute "newly discovered evidence" and declined to consider them. The trial court found further that "the disputed facts that the Plaintiffs are asking the Court to consider are either not material to the issue of the cause of the fall or not supported by evidence." The trial court also found that Plaintiffs failed to prove negligent design of the parking lot by expert evidence or otherwise. The trial court stated in part as follows:

> To the extent the Plaintiffs are arguing that the parking spaces were improperly located or designed without proper drainage, there is no lay testimony to support such a statement and there is no expert testimony. A jury could not look at the single photograph provided and determine anything about the propriety of the design of the parking lot because a challenge to the design would require expert proof as to the appropriate placement of handicap spaces, drainage areas and terrain slope. There is simply nothing in the record from which this Court could conclude that the water that existed beside the Plaintiffs' vehicle at the time of Mr. Copeland's fall, occurred as a result of the drain configuration or location or whether it naturally occurred as a result of the rainfall that occurred that day, before the Plaintiffs arrived or while they were inside the restaurant. The jury cannot be left to infer that the parking space was in a defective or dangerous condition based upon a photograph that would require the jury to engage in speculation, conjecture and guesswork. *Nee v. Big Creek Partners*, 106 S.W.3d 650, 654 (Tenn. Ct. App. 2002).

The trial court rejected Plaintiffs' ADA-based negligence per se claim because Plaintiffs failed to pinpoint any applicable ADA provision. Finally, the trial court found that the doctrine of res ipsa loquitur did not apply. Plaintiffs timely appealed to this Court.

## ISSUES

Plaintiffs raise nine largely overlapping issues on appeal. We restate and consolidate Plaintiffs' issues into the following dispositive issue: Whether the trial court erred in granting Defendant's motion for summary judgment.

## STANDARD OF REVIEW

The trial court decided this case by summary judgment. A trial court may grant summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The propriety of a trial court's summary judgment decision presents a question of law, which we review de novo with no presumption of correctness. *Kershaw v. Levy*, 583 S.W.3d 544, 547 (Tenn. 2019).

"The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). As our Supreme Court has instructed,

> when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 264 (Tenn. 2015). "[I]f the moving party bears the burden of proof on the challenged claim at trial, that party must produce at the summary judgment stage evidence that, if uncontroverted at trial, would entitle it to a directed verdict." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 888 (Tenn. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)).

When a party files and properly supports a motion for summary judgment as provided in Rule 56, "to survive summary judgment, the nonmoving party may not rest upon the mere allegations or denials of its pleading, but must respond, and by affidavits or one of the other means provided in [] Rule 56, set forth specific facts . . . showing that there is a genuine issue for trial." *Rye*, 477 S.W.3d at 265 (internal quotation marks and brackets in original omitted). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects*, 578 S.W.3d at 889 (quoting *Rye*, 477 S.W.3d at 265). "This court will affirm the trial court's summary judgment if it finds that the trial court reached the correct result, 'irrespective of the reasons stated.'" *Wood v. Parker*, 901 S.W.2d 374, 378 (Tenn. Ct. App. 1995) (quoting *Clark v. Metro. Gov't of Nashville and Davidson Cnty.*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991)).

## DISCUSSION

Plaintiffs argue that the trial court erred by granting summary judgment to Defendant. Specifically, Plaintiffs assert that the trial court refused to consider all of Plaintiffs' timely filed responsive pleadings and affidavits; misapprehended the record due to citation errors made by Plaintiffs; failed to consider whether Defendant was put on

constructive notice of a dangerous condition; erroneously rejected Plaintiffs' ADA-based negligence per se theory; wrongly failed to apply the doctrine of res ipsa loquitur; required expert testimony on matters within common knowledge; ignored both disputed and undisputed material facts; and failed to construe the evidence in the light most favorable to Plaintiffs.[8]

This appeal concerns a claim of negligence. A plaintiff must prove the following elements to establish a negligence claim: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate (legal) causation." *Helton v. Lawson*, No. E2018-02119-COA-R3-CV, 2019 WL 6954180, at *9 (Tenn. Ct. App. Dec. 18, 2019) (quoting *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). "Duty is 'a legal obligation to conform to a reasonable person standard of care in order to protect others against unreasonable risks of harm.'" *Cullum v. McCool*, 432 S.W.3d 829, 833 (Tenn. 2013) (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008)). Whether a defendant owes a plaintiff a duty of care in a negligence case is a question of law that we review de novo. *Id.* at 832–33.

"Business proprietors are not insurers of their patrons' safety." *Blair v. W. Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). Nonetheless, "they are required to use due care under all the circumstances." *Id*. (citing *Martin v. Washmaster Auto Ctr., U.S.A.*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996)). Plaintiffs bringing a premises liability claim must also prove that the alleged hazardous condition "was caused or created by the owner, operator, or his agent," or "if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014) (quoting *Blair*, 130 S.W.3d at 764). This Court has discussed constructive notice as follows:

> "Constructive notice" is defined as "information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 15 (Tenn. 1997) (quoting *Kirby v. Macon Cnty.*, 892 S.W.2d 403, 409 (Tenn. 1994)). Constructive notice may be established by showing that a dangerous or defective condition existed for such a length of time that a property owner, in the exercise of reasonable care, should have become aware of it. *Blair*, 130 S.W.3d at 764; *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986). Constructive

---

[8] Plaintiffs also raised an issue in their principal brief that the trial court erred by declining to grant their motion to alter or amend based on the trial court's exclusion of late-filed depositions. Plaintiffs withdrew that issue from consideration in their reply brief.

notice may also be established by showing that the dangerous condition resulted from "a pattern of conduct, a recurring incident, or a general or continuing condition." *Blair*, 130 S.W.3d at 765.

*Parker*, 446 S.W.3d at 351–52.

The Tennessee Supreme Court further discussed constructive notice in *Trentham v. Mid-Am. Apartments, LP*, 705 S.W.3d 151 (Tenn. 2025). In *Trentham*, the plaintiff slipped and fell on a pedestrian bridge at an apartment complex. *Id*. at 154. The plaintiff sued the company that owned the bridge, alleging that the defendant company had not complied with applicable codes and negligently failed to maintain the premises in a reasonably safe condition. *Id*. The plaintiff asserted that his slip-and-fall was caused by microbial growth on the bridge that the defendant should have known about and addressed. *Id*. Following a bench trial, the trial court entered an order finding in favor of the plaintiff and awarding him damages. *Id*. at 157. This Court affirmed the trial court on appeal, and the Tennessee Supreme Court granted the defendant's application for permission to appeal. *Id*. at 157–58. The Tennessee Supreme Court concluded,

> Here, the trial court found that [the defendant] should have known that a microbial growth would arise on the bridge if the bridge was not pressure washed consistently. Dr. Deatherage's testimony indicated that failure to clean a bridge like the one in this case would likely lead to a growth of fungus, causing the surface to become slick. Ms. Phillips and Mr. England's testimonies indicate that [the defendant] was aware that routine maintenance of bridges like the one that was involved in Mr. Trentham's fall is required to prevent unsafe conditions. Despite the fact that [the defendant] did not have actual notice of a microbial growth on the bridge, the trial court found that [the defendant] should have known that failure to pressure wash for over a year would likely lead to the occurrence of a general unsafe condition. We conclude that the "general or continuing condition" provision set forth in *Blair* is designed to apply to situations like this one, in which it is reasonably foreseeable that an unsafe condition would arise without proper maintenance. Therefore, the dangerous condition on the pedestrian bridge was not unexpected or random.

*Trentham*, 705 S.W.3d at 165. In addition, the *Trentham* Court concluded that the reasonable foreseeability of the potential harm combined with the magnitude of the potential harm compared to the burden imposed upon the defendant was such that the defendant owed the plaintiff a duty of care. *Id*. at 166. The Tennessee Supreme Court affirmed the Court of Appeals decision and the trial court's findings that the defendant owed a duty of care to the plaintiff and other residents. *Id*.

Plaintiffs cite *Trentham* in support of their argument that Defendant had constructive notice of a dangerous condition.[9] In their brief, Plaintiffs point to the slope of the parking lot directing water toward the handicap parking space at issue, a fixed obstruction in the form of a raised landscape bed halting the flow of water, and a storm drain placed near the obstruction. However, *Trentham* is distinct from the present case. There was specific evidence in *Trentham* that failure to engage in routine maintenance would lead to microbial growth on the pedestrian bridge. Here, Plaintiffs' arguments rest heavily on speculation. Plaintiffs have not shown that Defendant failed to properly maintain the parking lot or the handicap parking space at issue. Likewise, Plaintiffs do not cite any specific ADA provision that Defendant violated. Plaintiffs have not pointed to any details about the angle of the slope of the parking lot, the width of the handicap parking space, or in what exact manner the drain was dangerous or defective. Alleged technical deficiencies in the handicap parking space are not amenable to common knowledge. Plaintiffs' arguments as to what was wrong with the design and placement of the handicap parking space and why Defendant should have been aware that a dangerous condition would arise are generic.

To withstand Defendant's motion for summary judgment, Plaintiffs needed to show a genuine issue of material fact for trial. Under the *Rye* standard, "[t]he focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial." *Rye*, 477 S.W.3d at 265. Plaintiffs disputed eight of Defendant's material facts. However, Plaintiffs' purported disputes of material fact were disagreements with Defendant over the interpretation of Plaintiffs' deposition testimony. Plaintiffs' deposition testimony speaks for itself. At its core, Plaintiffs' testimony reflects that Mr. Copeland slipped and fell in standing water by a drain on a rainy day in a handicap parking space of unknown width on a slope of an unknown angle. That does not suffice to show that the handicap parking space constituted a reasonably foreseeable unsafe condition that Defendant should have known about and addressed. It was incumbent upon Plaintiffs to demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in their favor. Based upon our thorough review of all the timely-filed evidence, we conclude that Plaintiffs have failed to come forward with any evidence at the summary judgment stage that Defendant had constructive notice of a dangerous or defective condition.[10]

---

[9] Plaintiffs do not argue that Defendant had actual notice.

[10] Plaintiffs assert that the trial court failed to consider all the timely-filed evidence and misapplied the summary judgment standard. We do not discern from the trial court's orders that the trial court overlooked any timely-filed evidence or misapplied the summary judgment standard. Regardless, our appellate review in this matter is de novo, and we extend no deference to the trial court's decision. *See Kershaw*, 583 S.W.3d at 547. Accordingly, any such purported failure by the trial court does not, itself, constitute reversible error.

Finally, Plaintiffs invoke the doctrine of res ipsa loquitur. Under the doctrine of res ipsa loquitur, negligence may be inferred by circumstantial evidence when direct evidence is lacking. *Jenkins v. Big City Remodeling*, 515 S.W.3d 843, 849 (Tenn. 2017). The Tennessee Supreme Court has explained:

> To rely on res ipsa loquitur, a plaintiff must show that (a) the event that caused the injury is of a kind that ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the negligence is within the scope of the defendant's duty to the plaintiff. Restatement (Second) of Torts § 328D(1); *Provident Life*[ *& Accident Ins. Co. v. Prof'l Cleaning Serv., Inc.*], 396 S.W.2d [351,] 355–56 [(Tenn. 1965)] (quoting Restatement (Second) of Torts § 328D); *Burton*[ *v. Warren Farmers Coop.*], 129 S.W.3d [513,] 524–25 [(Tenn. Ct. App. 2002)]. The plaintiff may establish part (b) by showing that the specific cause for the event was under the defendant's control or that the defendant was responsible for all reasonably probable causes to which the event can be attributed. Restatement (Second) of Torts § 328D(1)(b) cmt. g. The essential question is whether "the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against." *Id*.

*Id*.

Plaintiffs state in their reply brief that a "[s]lip-and-fall in pooled water adjacent to a handicapped space is not an occurrence absent negligence." We disagree. A slip-and-fall in a parking lot on a rainy day absolutely can occur in the absence of negligence, and it is far from obvious that Mr. Copeland's fall was caused by negligence. The doctrine of res ipsa loquitur is inapplicable.

The evidence before us could not cause a rational trier of fact to conclude that Defendant had constructive notice of a defective, unsafe, or dangerous condition at the site of Mr. Copeland's slip and fall. Inasmuch as we must allow all reasonable inferences and resolve any doubts about the existence of a genuine issue of material fact in Plaintiffs' favor, *TWB Architects*, 578 S.W.3d at 887, we conclude that there are no genuine issues of material fact regarding whether Defendant had constructive notice of a defective or dangerous condition. We therefore affirm the trial court's decision granting Defendant summary judgment.

## CONCLUSION

The judgment of the Circuit Court for Knox County is hereby affirmed. Costs on appeal are assessed jointly and severally to the appellants, Charles Edward Copeland and Lu Ann Copeland, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE